### David PEABODY & Bill Monroe Lofty, Appellants,

v.

### STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

April 12, 1977.

Supplemental Opinion Aug. 11, 1977.

Certiorari Denied by Supreme Court Oct. 11, 1977.

Alan L. Cates, Chattanooga, for Peabody.

William B. Mitchell Carter, Chattanooga, for Lofty.

Brooks McLemore, Jr., Atty. Gen., Linda Ross Butts, Asst. Atty. Gen., Nashville, Lawrence E. Young, Jerry S. Sloan, Asst. Dist. Attys. Gen., Chattanooga, for appellee.

## OPINION

RUSSELL, Presiding Judge.

The appellants, David Peabody and Bill Monroe Lofty, were, upon a joint trial, each convicted of the armed robbery and kidnapping of a service station attendant. Each was sentenced to ten years for the armed robbery and two years for the kidnapping, the sentences to run consecutively.

The victim positively identified Peabody and Lofty as the men who first robbed him by presenting a pistol and demanding the paper money from the station cash register; and then forced him to leave in their automobile with them, and carried him across the State line into Georgia before releasing him. After their arrest, Lofty gave a detailed confession also implicating Peabody. The officers who took Lofty's confession tape recorded it, and reduced it to typewriting, but Lofty did not sign it. Peabody orally confessed to his implication in the robbery, but his confession was neither recorded nor set out in detail.

The root question in this case grows out of the fact that Lofty confessed to the use of a pistol in the robbery, but the calibre of the gun was not a part of what was recorded and written down. This confession was introduced through a Detective Cook, who testified to what was confessed, and said that Lofty admitted to the use of a .38 calibre pistol. This was the first time that the size of the weapon had been established. The victim had testified that one of the robbers had presented a pistol to perpetrate the robbery; and, on cross-examination, the victim had admitted that so far as he could say it could have been a toy pistol or a B.B. pistol.

When the calibre of the gun was testified to it precipitated a motion for a mistrial, on the grounds that the copy of Lofty's confession furnished to the defense did not contain that information; nor, it was said, were the names of witnesses to the confession of that information furnished. The problem was complicated by the impression of the trial judge that the victim's testimony had not made out a case of armed robbery, since the witness could not negate the possibility that the pistol was a toy. The trial judge deemed that the evidence of the calibre of the pistol was essential to making out a case of armed robbery.

The trial judge subsequently held that the statement of Lofty as to the calibre was admissible as to him, and that the names of the witnesses present had been furnished to the defense, and held that Lofty had no ground to complain. However, since Lofty's confession was not admissible as to Peabody, and the trial judge was convinced that evidence of the calibre was essential to make out the case of armed robbery, the trial judge indicated that this Court should reduce Peabody's armed robbery conviction to simple robbery, erroneously believing that a trial court could not make such a reduction in a proper case.

■ The trial judge misconstrued the legal effect of the victim's testimony, and the effect and importance of the evidence of the calibre of the pistol used. When the victim testified that he was robbed by two men, one of whom was brandishing a pistol, this was all that was necessary to make out a case of armed robbery. The fact that the gun might have been, or could have been, a toy does not undermine the prima facie armed robbery case made out. In *Hemphill v. State*, 532 S.W.2d 286 (Tenn.Cr.App. 1975), this language is quoted with approval:

> On this issue, . . . we hold that when a robbery is committed by the use of a pistol, and nothing appears indicating affirmatively that it was a toy or would fire only blanks, and it appeared to be a real pistol and was used as a real pistol to put the victim in fear of being shot so as to accomplish a robber's purpose, such a pistol is officially shown to be a deadly weapon to support a conviction for armed robbery. To put the burden upon the State to positively prove that a pistol so used was not a blank or a toy pistol is unrealistic and unreasonable. The fact that the pistol was displayed and appeared to be real and was thus used to effect a forcible robbery is strong and sufficient prima facie evidence of its deadliness. If the robber is to rely upon the theory that he robbed with a toy pistol, he must carry the burden of proving his theory.

The defendants introduced no proof at all. There was and is nothing to support speculation that this might have been a toy pistol.

■ Gun calibre is nothing more nor less than interior barrel size; or, to put it another way, a partial measure of the size of the projectile fired by the gun. Calibre is not an essential element of proof to make out a case of armed robbery. As a matter of fact, a pistol made to fire blanks, and even a toy pistol, has a barrel size or calibre; although neither would have a projectile size.

■ We hold that the evidence supports the convictions of both appellants of armed robbery. It is also apparent that the trial judge approved, as thirteenth juror, the conviction of Peabody; even though he erroneously concluded that the robbery by Peabody could not be classified as one committed with a deadly weapon, and expected us to reduce the conviction. We hold that proof that one of the robbers drew "a pistol" upon the victim is sufficient to support the armed robbery convictions of both defendants. There was no proof that the pistol was less than a deadly weapon, only the testimony of the victim that he was unable to negate the possibility that it might have been.

Appellant Lofty assigns as error the refusal of the trial court to suppress the confession, his contention being that he was under the influence of the drug valium when he gave it.

■ A statement is not rendered inadmissible by the mere fact that the relator was under the influence of drugs at that time, provided the accused was capable of making a narrative of past events or of stating his own participation in the crime. *Williams v. State,* 491 S.W.2d 862 (Tenn.Cr. App.1972).

■ The trial judge found that Lofty understandingly and voluntarily gave the statement. We will not disturb such a finding where, as here, the evidence does not preponderate against it. *Janow v. State,* 4 Tenn.Cr.App. 195, 470 S.W.2d 19 (1971). The transcript of Lofty's statement clearly demonstrates his ability to at that time make a narrative of the past events in issue.

■ Error is assigned upon the Court's giving a jury instruction defining the term "deadly weapon". The appellant Lofty specifically objects to that part of the instruction which dealt with the right of a robbery victim to assume that a pistol is loaded. Looking to the entire charge, as we do (see *Marshall v. State,* 528 S.W.2d 823, Tenn.Cr. App.1975), we hold that the instruction clarified both the State's theory and that of the appellant, and was not error. While it may have been a little broader than the factual theories called for, this resulted in no prejudice.

■ Appellant Peabody complains that the cases should have been severed. Obviously these cases should have been tried together, unless avoidable and illegal prejudice would thereby result. No such prejudice has been demonstrated on this appeal. See *Gwin v. State,* 523 S.W.2d 636 (Tenn.Cr. App.1975); *Williams v. State,* 491 S.W.2d 862 (Tenn.Cr.App.1972). The fact that Peabody would have accepted a plea bargain that was offered if both would accept, but Lofty refused, does not render the denial of a severance erroneous. *Seaton v. State,* 4 Tenn.Cr.App. 452, 472 S.W.2d 905 (1971).

■ Finally, both appellants assign as error the setting of consecutive sentences. The trial judge gave as his reason for so doing, "these are separate and distinct offenses committed at different times albeit at times in close proximity". We hold that this is not a sufficient compliance with the requirement of *Gray v. State,* 538 S.W.2d 391 (Tenn.1976), that the trial judge indicate in the record his reasons for ordering consecutive sentences, and remand the case for the purpose of allowing the trial judge to supply this deficiency. Should the trial judge be unable to comply by recording *Gray*-sufficient reasons, this will be entered of record and the sentences made concurrent.

All assignments of error have been carefully considered and the judgments are affirmed, subject to the aforesaid record completion upon remand.

GALBREATH and DAUGHTREY, JJ., concur.

## SUPPLEMENTAL OPINION

RUSSELL, Presiding Judge.

Both appellants assigned as error the setting of consecutive sentences. The trial judge gave as his reason for so doing, "these are separate and distinct offenses committed at different times albeit at times in close proximity". We held that this was not a sufficient compliance with the requirements of *Gray v. State,* 538 S.W.2d 391 (Tenn.1976), which requires that a trial judge indicate in the record the reasons for ordering consecutive sentences; and we remanded the case to the trial court for the entry upon the record of *Gray*-sufficient reasons, or for a new order making the sentences concurrent.

██ Upon remand the learned trial judge did not choose to inquire into any additional grounds, but took the position that the fact of the armed robbery followed by the kidnapping composed "aggravating circumstances" that supported his judgment that Peabody and Lofty are "dangerous offenders" subject under *Gray* to consecutive sentences. The bill of exceptions reflects this relevant statement by the trial judge:

"I never really thought that these defendants were deliberately dangerous people. I thought they were just sort of accidentally dangerous offenders, nonetheless dangerous offenders. Armed robbery clearly is a dangerous offense, kidnapping clearly is a dangerous offense, and I think that putting the two together supplies the aggravating circumstance".

The judge's memorandum filed in support of the order for consecutive sentences contains this language:

"I am of the opinion that each of these defendants is a dangerous offender as defined in *Gray v. State.* Both robbery by use of a dangerous weapon and kidnapping are inherently dangerous crimes in which the risk of human life is high. While the two offenses in this instance are each a part of one continuing episode, they are and were two separate and distinct offenses involving separate acts and intents and each in a separate and distinct time frame even though in close proximity to each other. That is to say, these are not simultaneous offenses involving essentially the same acts and intents for which concurrent sentences would be appropriate.

"I am of the opinion that the kidnapping of hostages following an armed robbery is sufficient aggravating circumstances for consecutive sentences. To the best of my recollection, this was in my thinking at the time of the order for same."

While the judgment and point of view of the trial judge are reasonable, his rationale for the ruling does not pass *Gray* muster. We find this language in that case:

"██ A defendant may be classified as a dangerous offender if the crimes for which he is convicted indicate that he has little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high. This does not mean that all defendants convicted of several counts of a dangerous offense, such as armed robbery, should be consecutively sentenced. Even though armed robbery is a dangerous offense, there are increased penalties for that crime. *The decision to impose consecutive sentences when crimes inherently dangerous are involved should be based upon the presence of aggravating circumstances and not merely on the fact that two or more dangerous crimes were committed.* However, this does not preclude the trial court from imposing consecutive sentencing for the commission of dangerous offenses where no aggravating circumstances are present if evidence indicates that the defendant should be sentenced under one of the other classifications." [Emphasis supplied.]

Here, the trial judge relied solely upon the dangerous offender classification. However, the only aggravating circumstances alluded to had to do with the dangerous nature of the offenses and the fact that two such offenses were perpetrated, and this judgment is clearly contrary to the holding in *Gray.*

The judgment of the trial court running the sentences consecutively is reversed.

GALBREATH and DAUGHTREY, JJ., concur.