**Richard LOWE, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

March 12, 1979.

Certiorari Denied by Supreme Court June 4, 1979.

**240**

Fredric J. Chester, Jr., Athens, for appellant.

William M. Leech, Jr., Atty. Gen., John C. Zimmermann, Asst. Atty. Gen., Nashville, Richard A. Fisher, Dist. Atty. Gen., Cleveland, for appellee.

DWYER, Judge.

## OPINION

This is an appeal in the nature of a writ of error from a conviction for committing the offense of murder in the second degree with punishment at confinement for life. There are two assignments of error: (1) the court erred in failing to sustain defendant's motion to suppress a statement purporting to be defendant's confession and waiver of constitutional rights; (2) the court erred in failing to sustain defendant's motion for a directed verdict on the charge of second degree murder, because there is no material evidence to support the verdict and the greater weight of the evidence preponderates against the verdict.

There were no eye-witnesses to this homicide which occurred on August 24, 1977, but a detailed statement was taken from the appellant after his arrest from which the following was revealed. The appellant and the decedent, George Dimler, had been shooting and gigging fish most of the day August 24, 1977. They also had been drinking beer during the day. After they returned to the decedent Dimler's home shortly before dark the decedent got into an argument with his wife at which time the appellant went outside to get some fishbait out of his truck. The decedent Dimler came out of his house and fired a shotgun into the ground. This prompted the appellant to take a .22 rifle from his truck and place it on the porch outside the front door. The appellant and Mildred Sneed, sister of Dimler's wife, then left the house to purchase some whiskey from a nearby bootlegger. When they returned to the residence Dimler became upset about the whiskey and hid it. He again got into an argument with his wife at which time the decedent took a shotgun and pointed it at the appellant and stated that he would blow his head off, snapped the trigger and the gun failed to fire. The appellant, standing near the front door, then stated that he was not going to wait for the decedent to again try to shoot him, so that he reached out onto the porch, got his rifle, pointed it at the decedent and pulled the trigger. When it did not go off he put another round in the chamber and shot the decedent four times, twice in the chest and twice in the back. The decedent dropped the shotgun and ran into the bathroom. The appellant then got another bullet out of his pocket and again loaded the rifle. The appellant heard the decedent hollering, so he walked into the bathroom, put the end of the rifle barrel against the decedent's forehead and shot him between the eyes, as he related, to

make him stop hollering. He then called his brother and told him to call an ambulance because he had shot the decedent.

A pathologist, testifying for the State, related that the decedent had died from multiple gunshot wounds. An autopsy on decedent's body reflected a wound in the mid-forehead, one in the left shoulder, another in the right side of the left nipple, another in the left back and another in the mid-back. The pathologist further testified that the wound in the shoulder and the wound in the mid-back region were not fatal; but the other three were fatal wounds.

The appellant, who did not testify, called his brother as a witness. He related that around 11:15 p. m. on the evening of August 24, 1977, he received a telephone call from the appellant who told him that he had just shot a man and to call the sheriff's office. This brother further related that the appellant sounded to him like he was "real drunk" at that time.

The first assignment of error: There was a full jury-out hearing held by the trial court on the question of whether or not the detailed statement of the appellant was the product of a free mind and a rational intellect. The evidence shows that a breathalizer test given to the appellant some three hours after his arrest reflected a blood alcohol content of .18 per cent. It is therefore the appellant's contention that the .18 per cent level, which is almost double the level required by T.C.A. § 59–1047, creates a presumption of intoxication for driving purposes, and clearly reflects that the appellant was under the influence of an intoxicant to such an extent that his confession could not have been a voluntary free act. The appellant contends that his free will and rational intellect was sufficiently impaired to prevent him from voluntarily and knowingly waiving his constitutional rights. *Vandegriff v. State*, 219 Tenn. 302, 409 S.W.2d 370 (1966); *Morelock v. State*, 3 Tenn.Cr.App. 292, 460 S.W.2d 861 (1970).

■ The State contends that the blood alcohol content of the appellant, even when it exceeds the statutory presumption for driving purposes, does not per se invalidate an effective waiver of constitutional rights. With this contention of the State we are in accord. We think the blood alcohol content of the appellant is a factor for the trial court to consider in determining whether or not the intoxication prevents a free and voluntary waiver of rights; and whether or not a confession was the product of a free mind and a rational intellect. *Pyburn v. State*, 539 S.W.2d 835, 840 (Tenn.Cr.App. 1976); *Williams v. State*, 491 S.W.2d 862, 866 (Tenn.Cr.App.1972); *United States v. Martin*, 434 F.2d 275 (5th Cir., 1970).

The evidence before the trial court on the motion to suppress reflects that the first officers arrived at the scene at approximately midnight, and Agent Wayne Adkins took the appellant's confession at 1:53 a. m. Agent Adkins testified that the appellant was alert and coherent and did not slur his words. He further testified that the appellant was read and signed a waiver of his rights. Also, the officer who administered the breathalizer test to the appellant testified that the appellant talked clearly, walked straight and did not appear to be intoxicated.

The appellant testified at the hearing that he was drunk on the night of the incident and did not recall the statement. His brother testified that the appellant telephoned him on the same evening mumbling and that appellant was intoxicated.

■ In matters of this kind great deference is given by the appellate court to the trial court's ruling for he sees and hears the witnesses and is in a far better position to weigh their credibility than the appellate court from a cold record. The trial court ruled after the full hearing that the appellant's statement was admissible. We think there was sufficient evidence to support that ruling and that the appellant has not carried his burden to show that the evidence preponderates against the trial judge's ruling. *Peabody v. State*, 556 S.W.2d 547, 550 (Tenn.Cr.App.1977). The assignment of error is accordingly overruled.

The second assignment of error: Since the appellant did not rest his case at the close of the State's proof but offered evidence in his defense, the motion for a directed verdict is not well taken. *State v. Thompson*, 549 S.W.2d 943, 946 (Tenn.1977). The appellant further contends the evidence does not support the conviction of murder in the second degree but rather supports one of voluntary manslaughter. With this we disagree. We think where the homicide, as here, was committed with a deadly weapon and where the appellant shot the decedent five times, the last to stop the decedent from hollering, it would be beyond cavil to argue that this killing was not maliciously committed. We think these methodical acts repudiate any argument that this slaying occurred upon adequate provocation or as a result of passion. The assignment of error is accordingly overruled.

The judgment of the trial court is affirmed.

TATUM, and BYERS, JJ., concur.