# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT  KNOXVILLE

### DECEMBER 1994 SESSION

**FILED**

June 25, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

|  |  |  |
|---|---|---|
| **STATE OF TENNESSEE,** | D 5 5 | |
| Appellee | 5 5 | No. 03C01-9404-CR-00144 |
| vs. | K 5 | SULLIVAN COUNTY |
| | 5 | Hon. Edgar P. Calhoun, Judge |
| **CLYDE DEWAYNE WESEMANN,** | 5 | |
| Appellant | 5 E | (1st Degree Murder) |

FOR THE APPELLANT:

Stephan M. Wallace
District Public Defender
P.O. Box 839
Blountville, TN. 37617

Greg L Lauderback
Attorney at Law
Lauderback & Lauderback
434 Shelby Street
Kingsport, TN. 37660

FOR THE APPELLEE:

Charles W. Burson
Attorney General & Reporter

Merrilyn Feirman
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

H. Greeley Wells, Jr.
District Attorney General

Rebecca H. Davenport
Asst Dist. Attorney General
Blountville, TN. 37617

OPINION FILED: _____

**AFFIRMED**

Robert E. Burch
Special Judge

## OPINION

Following a jury trial, Appellant was found guilty of Murder in the First Degree, Aggravated Burglary and Theft of less than five hundred ($500)Dollars. The jury sentenced Appellant to life for the murder and the trial court sentenced him to ten years for the burglary and eleven months twenty-nine days for the theft. The trial court ruled that the burglary sentence shall be served consecutively to the murder sentence. He appeals of right to this Court assigning four issues for review:

1). Whether the proof of deliberation was insufficient to sustain a conviction of murder in the first degree.

2). Whether evidence of a prior theft from the victim by the appellant was improperly admitted.

3). Whether the confession of the appellant was improperly admitted.

4). Whether the trial court erred in sentencing the appellant in that mitigating factors not listed in the statute were not considered and whether consecutive sentencing was proper.

We find that none of these issues constitute prejudicial error and affirm the conviction.

## FACTS

On June 11, 1992, at approximately eight p.m., Mrs. Virginia Trusley was found dead in the living room of her home in rural Sullivan County. The house had been ransacked and Mrs. Trusley had apparently been shot as she dozed in front of the television with her Bible open on her lap.

Very quickly, suspicion centered upon Appellant, who had mowed Mrs. Trusley's yard. Appellant's girlfriend led police to an out-of-the-way bridge under which she had watched Appellant hide the murder weapon, which had been stolen from the home of the deceased. When brought in for questioning, Appellant confessed to this crime.

In his confession, Appellant stated that he entered the house about five a.m. on the day that the body was discovered by breaking the glass in a back door. He searched the kitchen but found nothing which he considered worth taking. Appellant then walked down the hall to the bedroom. First searching the closet, he found a .410 shotgun. Upon discovering the shotgun, Appellant walked back up the hall to the living room where Mrs. Trusley was sleeping. He aimed the shotgun at her and pulled the trigger. The shot entered Mrs. Trusley's temple, instantly killing her. Appellant stated that the shot surprised him because he "didn't know for sure" that the gun was loaded. Appellant stated that he immediately regretted what he had done. After killing Mrs. Trusley in her sleep, Appellant resumed searching the house. After the search, he left with the only possession of the deceased which he considered valuable, the shotgun.

After leaving the house, Appellant then went home and went to bed. The following day, Appellant talked to several people about selling the shotgun. The police questioned Appellant briefly but he denied any knowledge of the murder. The following day, Appellant learned that the police were again searching for him. Since Appellant's car would not start, he called his girlfriend who drove him to the Sensabaugh Hollow bridge where he hid the shotgun.

## SUFFICIENCY OF PROOF OF DELIBERATION

In his first issue presented for review, Appellant insists that the evidence introduced at his trial is not sufficient as a matter of law to sustain a conviction of murder in the first degree.

## Standard of Review

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. *State v. Cabbage* 571 S.W.2d 832 (Tenn. 1978). A verdict of guilt, approved by the

3

trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in testimony in favor of the State. *State v. Townsend* 525 S.W.2d 842 (Tenn. 1975). The presumption of innocence is thereby removed and a presumption on guilt exists on appeal. *Anglin v. State* 553 S.W. 2d 616 (Tenn. Crim. App. 1977). The defendant has the burden of overcoming this presumption. *State v. Brown* 551 S.W. 2d 329 (Tenn. 1977).

When the sufficiency of the evidence is challenged on appeal, the test is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Duncan* 698 S.W. 2d 63 (Tenn. 1985); *Rule 13(e), T.R.A.P.*

**Analysis**

In this appeal, able counsel for Appellant have sagely narrowed the focus of their evidentiary sufficiency attack upon the single element of deliberation. Under the law as it existed at the time of this crime, if this essential element of the crime of murder in the first degree was not established by the proof, a conviction of first degree murder could not stand.

At the time of the commission of this crime, first degree murder not committed in the perpetration of a specific felony required the "intentional, premeditated and deliberate killing of another." T.C.A.§ 39-13-202 (a)(1) (1992 Supp.). A death caused by the intentional act of another was then and is now presumed to be second degree murder. *State v. Brown* 836 S.W.2d 530, 543 (Tenn. 1992). Thus, at the time of the trial of this case, the State must have proven premeditation and deliberation to raise the offense to first degree murder. Id. Premeditation necessitates "the exercise of reflection and judgment," T.C.A.§ 39-13-201(b)(2) (1992 Supp.), requiring "a previously formed design or intent to kill." *State v. West* 844 S.W.2d 144, 147

4

(Tenn. 1992). Deliberation, on the other hand, was defined as a "cool purpose . . . formed in the absence of passion." *Brown*, 836 S.W.2d at 538. It involved the process of weighing matters such as the wisdom of proceeding with the killing, the manner in which it will be accomplished, and the likely consequences if apprehended. *Brown* 836 S.W.2d at 540-41. Deliberation also required "some period of reflection, during which the mind is free from the influence of excitement." Id. The deliberation and premeditation must be akin to the deliberation and premeditation shown for a murder performed by poisoning or lying in wait. *Brown* 836 S.W.2d at 539 (quoting *Rader v. State* 73 Tenn. 610, 619-620 (1880))

No specific time is required to form the requisite deliberation. *State v. Gentry* 881 S.W.2d 1(Tenn. Crim. App. 1993). Deliberation is present when the circumstances suggest that the murderer contemplated the manner and consequences of his act. *West* 844 S.W.2d at 147. Though similar, deliberation and premeditation are defined separately and are distinct elements of the crime of murder in the first degree. See *State v. Brooks* 880 S.W.2d 390, 392-93 (Tenn. Crim. App. 1993). Each may be inferred from the circumstances where those circumstances affirmatively establish that the defendant premeditated his assault and then deliberately performed the act. *State v. Richard Nelson* (unreported) 1993 Tenn. Crim. App., No. 02C01-9211-CR-00251 (Tenn. Crim. App., at Jackson, Oct. 13, 1993). This court has previously held that the holding in *Brown* requires "proof that the offense was committed upon reflection, 'without passion or provocation,' and otherwise free from the influence of excitement" before a second degree, intentional murder can be elevated to murder in the first degree. *State v. David L. Hassell* (unreported) 1992 Tenn. Crim. App., No. 02C01-9202-CR-00038, slip op. at 3 (Tenn. Crim. App., at Jackson, Dec. 30, 1992). The

5

circumstances must suggest that the murderer reflected on the consequences of the act and that the thought process took place in a cool mental state. *State v. David Hassell*, supra.

The elements of premeditation and deliberation were questions for the jury and may have been inferred from the circumstances surrounding the killing. *State v. Gentry*, supra. Still, a jury may not engage in speculation. *State v. Bordis* 905 S.W.2d 214, 222 (Tenn. Crim. App.1995).

Premeditation and deliberation, like intent to kill, are subjective states of mind. Often there is no witness to the killing; and even if there is a witness, the killer does not always speak aloud what is in his mind. Therefore, the existence of the facts of premeditation and deliberation must be determined from the defendant's conduct (so far as we can learn of it, usually from circumstantial evidence) in the light of the surrounding circumstances. *Substantive Criminal Law*, 2nd, LaFave and Scott (1986) at Section 7.7.

We now examine the facts of this case in light of the above authorities.

The only proof of deliberation in this case comes from the physical evidence found in the house of the deceased and from the confession of the appellant.

Appellant's statement indicated that he approached Deceased's home about five a.m. and found her asleep in a chair in the living room(she could be seen from the door). Entry was accomplished by forcing a screen door and breaking the glass in the door. In his signed statement, Appellant states that he does not remember what he used to break the glass but police notes of the statement reflect that Appellant said a garden tool container was used. The physical evidence indicates that it may have been a can of paint, the top of which came loose during the process. After entry, Appellant determined that the deceased remained asleep.

Although not in his signed statement, police notes indicate that Appellant stated that as soon as he "pulled the screen door", he "went berserk".  In his signed statement, Appellant indicated that he was "very anxious" that the deceased would wake up.

The signed statement then reflects that Appellant opened the back door and went into the kitchen.  He then searched all of the kitchen cabinets but failed to find anything which he considered worth taking.  Appellant then walked past the deceased into the bedroom.  He looked into the closet and found the .410 shotgun.  Appellant took the shotgun, walked back up the hall to the living room where the deceased was asleep, aimed the shotgun at her and pulled the trigger.  In his signed statement, Appellant stated both that he did not know "for sure that the gun was loaded" and that he "figured the gun was loaded" because county people often keep a gun loaded so that it may be used quickly, if needed. In his statement, Appellant stated that he "immediately regretted shooting her".  If this is true, subsequent facts give no indication of it.  After killing the deceased in her sleep, Appellant searched the living room, then returned to the kitchen where he searched a hutch.  He then returned to the bedroom from whence he had taken the shotgun and searched that room, including the closet where he had found the gun.  Upon concluding his search and finding nothing which he considered valuable, Appellant returned to the kitchen and used a towel to wipe the house for fingerprints.  He then took the shotgun and left the house.  After trying to sell the shotgun, Appellant disposed of it under a culvert when he heard that the police had asked about him.

Exhibits ## 24 through 42 (pictures of the entry and inside of the house) are instructive.  From these pictures, it can be determined that the deceased kept a neat house, with everything in its place with the possible exception of some personal papers

7

on the kitchen table.  It can also be determined that Appellant methodically searched the house looking for items of value.  He threw the contents of the dresser drawers on the floor but otherwise disturbed very little other than he left the drawers open.  We note that nothing has been knocked over in spite of there being numerous small items on the kitchen counter and the end table in the living room.

In looking at the evidence to determine Appellant's state of mind at the time of the killing, we initially note that he said he went "berserk" as soon as he entered the residence.  We do not know what meaning Appellant ascribes to that word, but it seems unlikely to be the dictionary definition.  The word "berserk" means "destructively or frenetically violent; deranged". *American Heritage Dictionary of the English Language* American Heritage Publishing Co.,Inc. New York 1969.  In fact, the word has its derivations in Norse mythology and describes warriors who were considered to be so uncontrollably inflamed with the fury of fighting that they were dangerous to friend and foe alike.  These warriors shunned coats of chain mail armor in favor of a bear skin fastened over one shoulder.  They were thus called "berserkers", from the Norse words for "bear" and "shirt". *Funk, Charles E., Litt.D. Thereby Hangs a Tale, Stories of Curious Word Origins*, Harper & Row New York 1950.  The word connotes uncontrollable frenzy.  We see no evidence of any such frenzy in the photographs of the crime scene nor do we detect any indication of it in Appellant's narrative of the killing.  In the only other mention of his mental state prior to the killing, Appellant said he was "very anxious".  This is certainly an understandable state of mind on the part of one who is burglarizing the occupied house of another but it is certainly not berserk.  We must conclude, therefore, that Appellant's meaning of berserk is not that shared by the population in general or that he was being untruthful.

The events narrated by Appellant and the photographs in fact paint quite a different story. The appellant entered the house, methodically searched the kitchen then proceeded to the bedroom where he found the shotgun in a closet. Up until this point, we have no difficulty accepting the fact that Appellant had no intention to kill the deceased but only to steal her belongings. We note, however, that it was at this point that Appellant temporarily abandoned his methodical search of the house for items to steal and walked back down the hall with the shotgun. The only motive for this action which can be derived from the proof is that Appellant left the bedroom with the intention of shooting the deceased. In light of subsequent events, there could have been no other reason for his action. Therefore, Appellant had formed the intention to kill before he left the bedroom and walked up the hall to the living room. He certainly had an opportunity for premeditation and deliberation. These circumstances "affirmatively establish that the defendant premeditated his assault and then deliberately performed the act". *State v. Richard Nelson*, supra. For these circumstances to fail to establish deliberation, one would have to assume that Appellant was simply passing the vicinity of the deceased on another errand when he spontaneously decided to shoot her. This explanation defies logic. There is absolutely no indication of any mental state except that of calm deliberation. The pictorial exhibits show that Appellant methodically searched the house both before and after the shooting. Nothing was knocked over nor displaced, only the contents of drawers and cabinets examined. The only indications of the search of the house were the cabinets and drawers having been left open and the contents thereof having been thrown to the floor. The facts negate any agitation on the part of Appellant. The term "in cold blood" aptly describes the circumstances of this killing. The circumstances affirmatively establish that the murderer reflected on the consequences of the

act and that the thought process took place in a cool mental state. See *State v. David Hassell*, supra.

In his signed statement, Appellant stated that he pulled the trigger, **not knowing for sure that the gun was loaded** (emphasis supplied). He stated that it surprised him when the gun went off. Appellant gave as the reason for his action, "I shot her because I never killed anyone before". A note to his statement, which was not signed by Appellant but was presented to the jury added the phrase, "...and I wanted to know what it felt like". Apparently, this was the "consequences" of the act upon which he reflected before he killed the deceased. In another part of Appellant's unsigned statements to the police, he admitted that he expected the gun to be loaded because country people who keep guns for protection usually do keep them loaded. Certainly the fact that Appellant stated that he did not "know for sure that the gun was loaded" is not indicative of a lack of deliberation. If he actually thought the gun might not be loaded, we cannot imagine any reason at all for his trip back up the hall.

For the reasons above stated, we are convinced that the facts affirmatively establish that this murder was accomplished only after both premeditation and deliberation. The issue is without merit.

## ADMISSION OF STATEMENT

We next deal with Appellant's third issue because it is necessary to our examination of his second issue.

Appellant submits that the trial court erred when it refused to suppress Appellant's statement or, at least, redact same.

### Standard of Review

A determination by the trial court that a confession has been given voluntarily and without coercion is binding upon the appellate court in the absence of a showing that the evidence preponderates against the ruling. *Lowe v State* 584 S.W.2d 239

(Tenn. Crim. App. 1979). On appeal, the appellant has the burden of showing that the evidence preponderates against the findings of the trial court. *Brasiel v State* 529 S.W.2d 501(Tenn. Crim. App. 1975). With regard to the claim that a confession was involuntary, a trial court's determination at a suppression hearing is presumptively correct on appeal. This presumption of correctness may only be overcome on appeal if the evidence in the record preponderates against the trial court's findings. *State v. Kelly* 603 S.W.2d 726, 729 (Tenn. 1980). The appellate courts of this state are bound to accept that determination by the trial court that a confession was freely and voluntarily given unless the evidence in the record preponderates against that finding. *State v. Adams* 859 S.W.2d 359, 362 (Tenn. Crim. App. 1992). Findings of fact made by the trial judge after an evidentiary hearing of a motion to suppress are afforded the weight of a jury verdict, and an appellate court will not set aside the trial court's judgment unless the evidence contained in the record preponderates against the findings of the trial court. *State v Odom* 928 S.W.2d 18 (Tenn. 1996).

The determination of whether a confession has been obtained improperly, by coercive or improper inducement, can only be made by examining all the surrounding circumstances involving the interrogation leading to the confession. *Monts v State* 400 S.W.2d 722(Tenn. 1966). The question in each case is whether the conduct of the law enforcement officers was such to undermine the accused's free will and critically impair his capacity for self-determination so as to bring about an involuntary confession. *Columbe v. Connecticut* 367 U.S. 568, 602, 81 S. Ct. 1860, 1879, 6 L Ed. 2d 1037, 1057-58 (1961); *State v. Kelly* 603 S.W.2d 726, 728(Tenn. 1980).

### Analysis

Appellant insists that his interrogation for four hours by

11

two detectives in a five foot by ten foot room constituted a coercive environment and that his interrogators used coercive tactics, including shouting at the appellant to overpower his will and bring about the confession.  In addition, Appellant submits that his interrogators made a promise to him that his girlfriend would not be charged if he confessed to this crime, thus inducing him to confess.

Appellant agrees that he was read his *Miranda* rights and did sign a waiver of them.  He does not contest the validity of the waiver, but focuses upon the actions which followed the waiver.

The trial court, after a hearing on the motion to suppress, found that the confession had been voluntary.  In the ruling on the motion, the trial court stated, "There was no threat or undue pressure placed on him.  There was never any threat to charge Marlene Waters (Appellant's girlfriend) or to hold her until he confessed... ".

Obviously, the trial court accepted the testimony of the officers present at the interrogation that they were not oppressive in their manner.  It was also accepted by the trial court that the officer ignored the advice, passed to him in the form of a note, to "invade his (Appellant's) space" and to "bear down on him".  The trial court likewise found that the confession was not induced by any promises with respect to Appellant's girlfriend.  From an examination of the record, we find no reason to disagree with the findings of the trial court with respect to the voluntariness of the confession.

Appellant argues in the alternative that the confession should have been redacted because additions were made to Appellant's signed statement after he had signed it.  He cites no authority for this proposition.

At the beginning of the interrogation, Appellant denied committing the crime, mentioning as possible suspects "Waldo" and "John".  After about an hour and a half, Appellant admitted

12

committing the crime.  Obviously, the four hour conversation included many subjects, including inquiries concerning Appellant's comfort.  One of the officers wrote a three page statement containing the pertinent facts and Appellant signed it.  Thereafter, the officer discovered that he had omitted some facts which he considered important and interlineated them into the confession.  Appellant refused to initial the changes because "they were incriminating".  The Sheriff then questioned Appellant about his statement and had him sign the same again, this time using his full name.  When asked by the Sheriff whether he had made the statements contained in the interlineations, Appellant admitted that he had.

At the hearing of the motion to suppress, the trial court ruled the additions to the original statement to be an accurate reflection of what Appellant actually said.  We cannot disagree.

The interlineations were explained to the jury and it was told to them that they were added after Appellant had signed the statement.  The procedure was not misleading.

The issue is without merit.

**EVIDENCE OF EARLIER THEFT**

Appellant insists that it was error to admit evidence of Appellant having stolen some rings from the deceased and a confrontation some ten days before the killing between the deceased and the appellant concerning this theft.  There are two closely related questions presented in this issue:

> 1). The admissibility of evidence of the confrontation;

> 2). The admissibility of evidence of the theft.

With regard to the confrontation, Beverly Jones, the daughter of the deceased, testified that the deceased told her that she had confronted Appellant and accused him of stealing four rings from her house.  The trial court instructed the jury that this evidence could only be considered by them to show the Appellant's "state of mind and his intent".  The trial court had

13

previously ruled that this evidence was admissible to establish the motive of the appellant to premeditate and deliberate to kill the deceased.

There are two principal problems with this evidence. First, although the accusation itself was not hearsay, the testimony of the witness to the accusation was hearsay, second, the evidence was not relevant.

The testimony of Ms. Jones was not that she heard her mother make the statement, but that her mother **told** her that she made the statement. Thus the out-of-court declarant (the deceased) told the witness that the declarant had made the statement. The witness was not present when the accusation was made. Ms. Jones' testimony was hearsay. It was offered to show that the statement from the deceased declarant to the witness was true (the deceased had accused the appellant). The statement testified to by Ms. Jones was not an expression of a state of mind but a narrative of events which did not occur in her presence. Rule 802, Tenn. R. Evid. provides that hearsay is not admissible unless it comes within a recognized exception to the rule. This statement does not. The testimony was improperly admitted.

Appellant submits that the hearsay exception of Rule 803(3) Tenn. R. Evid.(generally known as the "state of mind" exception) does not allow the introduction of the accusation. The State concedes that the testimony of Ms. Jones does not fit this exception but correctly points out that the accusation was not hearsay. We would also add that the trial court did not rule at the trial that the accusation fit within the 803(3) exception. The trial court ruled that it was not hearsay. The statement is not hearsay. It was not admitted for the proof of the fact contained in the accusation but rather that the deceased had accused Appellant of the theft and that accusation was a motive for the murder. It should also be noted that Appellant's

14

assertion that the accusation does not fit within the Rule 803(3) exception would be correct if the statement were hearsay. Rule 803(3) does not allow the admission of a statement to show a non-declarant's state of mind. *Darron Keith Daniel vs. The Atlanta Casualty Co.* (unreported) Tenn. App.(W/S) No.02A01-9508-CV-00167 opinion filed December 31, 1996.

Even if the accusation had been properly admitted, it was irrelevant. There exists no other evidence in the record that Appellant was motivated by this accusation to kill the deceased. As has been pointed out with respect to the first issue presented for appeal, Appellant was unarmed when he broke into the home of the deceased and did not initially harm her. His intention when he entered the house was burglary, not homicide. For the jury to find that this accusation was a motive for murder in this case would have required rank speculation. This evidence was not relevant. No objection upon this ground was made by Appellant. Without such an objection and subsequent inquiry by the trial judge, there is no way that the trial judge can know whether evidence is relevant. The trial judge is not privy to the planned testimony in a case and must rely upon counsel to insure that evidence is relevant or to object when it is not so that inquiry can be made as to its relevance.

The error in this case was compounded when Appellant's statement admitting the theft of the rings was introduced into evidence. The trial court recognized that this was proof of other crimes and allowed its introduction to establish intent and motive. An additional basis for the ruling by the trial court was that it established that the allegations of the deceased (mentioned above) were true. It was also ruled that the probative value of the proof of the prior theft outweighed its prejudicial effect.

The procedure to be followed in this situation is controlled by Tenn. R. Evid. 404(b).

Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and

(3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

The trial court basically complied with the procedural requirements of Rule 404 (b). The question now becomes whether the trial court's determination that the prior theft was admissible to establish Appellant's motive and intent and to show that the deceased's accusation was accurate was proper.

Evidence of other crimes is excluded unless it falls within certain well-defined exceptions. *State v. Rickman* 876 S.W.2d 824, 827 (Tenn. 1994). Even if other crimes evidence is relevant to a disputed material issue, it is still excluded "if its probative value is outweighed by the danger of unfair prejudice." Tenn. R. Evid. 404(b)(3). After hearing the evidence and arguments of counsel outside of the presence of the jury, a trial court must determine whether the proffered evidence is relevant to a disputed, material issue in the case (other than the propensity of a defendant to commit crimes) and whether the state has established that relevance by clear and convincing evidence. If relevant, the court must then weigh the probative value of the evidence against its potential for unfair prejudice by considering the unique facts and circumstances of the case. These circumstances include (1) the similarities between the other

conduct and that charged, (2) the time that has elapsed between the two events, (3) the strength of other evidence in the state's case to prove the disputed issue, and (4) the strength of the evidence of and connecting the defendant to the other crime. If the probative value of the other crimes evidence and the legitimate inferences which may be drawn therefrom are sufficiently strong to outweigh its prejudicial effect, the evidence may be admitted. If the unfair prejudice is "dangerously close to tipping the scales," the court must exclude the evidence despite its relevance to some material issue. *State v. Luellen* 867 S.W.2d 736, 741.

Tennessee recognizes three instances in which evidence of uncharged crimes may be admissible: (1) to prove identity (including motive and common scheme or plan); (2) to prove intent; and (3) to rebut a claim of mistake or accident if asserted as a defense. *State v McCary* 922 S.W.2d 511 (Tenn. 1996).

According to the ruling of the trial court, admission of this statement in order to show that the accusation of the deceased was true was indicative of motive on the part of the appellant.

Although there is ample evidence that Appellant is the one who perpetrated this crime, it can be argued that motive (normally an identity issue) and intent are contested issues in the trial of Appellant because they could establish the elements of premeditation and deliberation. The problem is that they do not. The theft of the rings and subsequent accusation are not connected by other evidence in any way to the crime for which Appellant is on trial. In another murder case, evidence such as this may be admissible but in the case before us there is simply no evidence from which a reasonable person could infer that the appellant went to the home of the deceased that morning in order to murder her because of her accusation. In fact, the evidence

17

in the case refutes such a theory.  It is highly unlikely that Appellant would have gone unarmed to the house that morning if he had intended homicide.  Even if he had done so, Appellant's actions once in the house are those of one who came to steal, not those of one who came to murder.  From the evidence, it can only be inferred that Appellant only decided to kill the deceased after he had entered the house.  The accusations of ten days earlier had no bearing upon his decision.  To infer homicidal intent from the accusation of theft would have required the jury to engage in rank speculation.

Admission of the statement of the appellant in which he admitted stealing the rings was error.

The question now becomes whether these errors were prejudicial to a fair trial of the appellant in this case.  We hold that they were not.

There is ample evidence of Appellant's guilt.  His detailed confession is corroborated by the physical evidence.  Appellant's girlfriend led police to the bridge under which Appellant had hidden the murder weapon.  Several people saw Appellant with the stolen shotgun after the crime.  Likewise, the evidence of Appellant's premeditation and deliberation are strong.  As noted with respect to Appellant's first issue presented for review, there can be no other explanation for Appellant's walk up the hall with the shotgun except that he did so intending to kill the deceased when he finished his travel.  The prejudicial effect of proof that Appellant stole four rings from the deceased prior to the homicide is slight especially when the proof of the homicide involved proof that the appellant was stealing from the deceased when he committed the murder.  We further find that the proof of other crimes added no "new dimension to the jurors' view of the defendant". See *State v. Carter* 714 S.W.2d 241, 247, 248 (Tenn. 1986).  The situation in this case is not unlike the one dealt with by our Supreme Court in *State v. Harris* 839 S.W.2d 54 (Tenn.

18

1992).  In the *Harris* case (a murder prosecution), admission of evidence that a few days before the killings, defendant and codefendant stole credit cards and jewelry was harmless error under Rule 36(b), T.R.A.P.  This rule states:

> (b) Effect of Error. A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.

We have considered the whole record and are of the certain opinion that the error did not rise to the level required by Rule 36(b).

The error is harmless.

## SENTENCING

As his last issue presented for review, Appellant insists that the trial court erred in sentencing the defendant. Appellant does not quarrel with the sentence of life as the result of the first degree murder conviction.  He does cite two alleged errors in sentencing by the trial judge on the burglary and theft convictions:

1). That the trial court did not give proper weight to the non-statutory mitigating factors presented at the sentencing phase of the murder trial in setting the sentence for the burglary and theft.

2). That the trial court erred in ordering the sentences to be served consecutively to the life sentence for murder.

## Standard of Review

The standard of review in sentencing in criminal cases is a *de novo* review with a presumption that the sentence set by the trial court is correct if the record shows that the trial court followed the principles of the Sentencing Act of 1989, considered

19

the relevant factors and made proper findings of fact in the record. *State v Fletcher* 805 S.W.2d 785, 789 (Tenn. Crim. App. 1981). If this is done, then we must affirm even if we would have preferred a different result. Id. The burden of showing that the sentence is improper is upon the Appellant. Id.

A portion of the Sentencing Reform Act of 1989, codified at T.C.A. § 40-35-210, established a number of specific procedures to be followed in sentencing. This section mandates the court's consideration of the following:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
>
> (2) the presentence report;
>
> (3) the principles of sentencing and arguments as to sentencing alternatives;
>
> (4) the nature and characteristics of the criminal conduct involved;
>
> (5) evidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and
>
> (6) any statement the defendant wishes to make in his own behalf about sentencing.

The record before us indicates that the trial judge considered all of the above factors which applied to this case.

### Analysis

Appellant insists that the trial judge did not give sufficient weight to the non-statutory mitigating factors in his determination of his sentence.

T.C.A. § 40-35-210 provides that if there are enhancing and mitigating factors in the record, the court must start at the minimum sentence in the range and enhance the sentence as appropriate for the enhancement factors and then reduce the sentence within the range as appropriate for the mitigating factors.

20

The Act further provides that "whenever the court imposes a sentence, it shall place on the record either orally or in writing, what enhancement or mitigating factors it found, if any, as well as findings of fact as required by § 40-35-209." T.C.A. § 40-35-210(f).  This was done.

The weight, if any, to be afforded to enhancement and mitigating factors is left to the trial judge's discretion. *State v. Moss* 727 S.W.2d 229, 237 (Tenn. 1986); *State v. Shelton* 854 S.W.2d 116, 123 (Tenn. Crim. App. 1993).

In this case, the trial judge found four enhancing factors:

1). A previous history of criminal convictions and behavior beyond that necessary to establish the sentencing range. Appellant had two felony and numerous misdemeanor convictions above and beyond that required to enhance his sentencing range to Range II.

2). The victim was particularly vulnerable because of her age and physical disability.

3). Appellant had a previous history of unwillingness to comply with the conditions of a sentence involving release into the community.

4). The crime was committed while Appellant was on probation for another crime.

After rejecting the mitigating factor of the appellant's age (24), the trial court found two mitigating factors:

1). At the time of the crime, Appellant was suffering from a mental condition which significantly reduced his culpability of the offences.

2). The crime did not involve violence or injury.

As to the last mitigating factor, the trial judge obviously treated the burglary and theft entirely separately from the murder.  This he is required to do.  The trial judge reasoned that the burglary was complete upon entering the house and found that Appellant entered the house with the intent to commit theft.

21

This is entirely supported by the record as has been discussed above. From his comments on the record, we can easily determine that the trial judge gave this factor little, if any, weight. We agree.

Appellant insists that the trial judge gave insufficient weight to the mitigating factor of the appellant's unfortunate childhood. We disagree. The record affirmatively shows that the trial judge considered in detail the childhood of the appellant in his determination of Appellant's mental state which reduced his culpability for the offense. The proof showed, and the trial judge recognized, that Appellant's childhood had caused his present mental state. The record shows that the trial judge considered this factor.

It might be argued that the trial judge gave no weight to the mitigating factor of mental condition because he assessed the maximum sentence. This is not true. This mitigating factor was simply outweighed and overwhelmed by the enhancing factors. Appellant had an extensive criminal history and this history established that Appellant was unwilling to comply with the requirements of a sentence involving release into the community. In fact, this crime was committed while Appellant was on probation for another crime. The facts of this case establish a need to protect the citizens of Sullivan County from Appellant and that this can only be done by removing him from society for a long period of time.

In the case of *State v James Taylor* (unreported) Tenn. Crim. App. at Nashville No. 89-93-III, opinion filed April 25, 1990, we considered a very similar factual situation. After a *de novo* review (as required by the law at that time), we considered the case of a defendant who had a criminal history similar to that of Appellant and affirmed a maximum sentence for burglary during which a murder was committed. Admittedly, in the *Taylor* case, there were no mitigating factors found. Again we point out that

22

the enhancing factors in this case simply inundated the mitigating factor. Although the mitigating factor existed, in view of the enhancing factors, no reduction from the maximum sentence was called for.

We agree with the sentence of the trial judge.

Next, Appellant insists that the trial judge erred in ordering the sentences for burglary and theft to be served consecutively to the life sentence for murder but fails to cite any authority therefor.

T.C.A.§ 40-35-115 (b) allows consecutive sentencing if, *inter alia*:

> (2) The defendant is an offender whose record of criminal activity is extensive.
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high.
>
> (6) The defendant is sentenced for an offense committed while on probation.

The trial court found these three factors in Appellant's case. In addition, the trial court found it necessary to incarcerate Appellant for the protection of the public. We cannot disagree.

This issue is without merit.

The judgment of the trial court is affirmed.

_____
Robert E. Burch,
Special Judge

**CONCUR:**

_____
Gary R. Wade, Judge

23

_____
Joseph M. Tipton, Judge