IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville May 21, 2013

**STATE OF TENNESSEE v. TIWON ANTWAN HARVELL**

**Appeal from the Criminal Court for Davidson County**
**No. 2011-B-1104   Cheryl Blackburn, Judge**

---

**No.  M2012-01953-CCA-R3-CD - Filed September 6, 2013**

---

The Defendant, Tiwon Antwan Harvell, was convicted by a Davidson County Criminal Court jury of facilitation of aggravated robbery, a Class C felony, and evading arrest in a motor vehicle, a Class E felony.  *See* T.C.A. §§ 39-11-403, 39-13-402, 39-16-603.  The trial court sentenced the Defendant as a Range II, multiple offender to concurrent terms of ten years for facilitation of aggravated robbery and four years for evading arrest.  On appeal, he contends that his interview with the police should have been suppressed and that a transcript of the interview should not have been introduced with the video recording.  We affirm the judgments of the trial court.

**Tenn. R. App. P . 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Andrew Chad Davidson, Nashville, Tennessee, for the appellant, Tiwon Antwan Harvell.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel; Victor S. (Torry) Johnson, III, District Attorney General; and Megan N. King, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to a robbery of a Mapco store in the early morning hours of January 20, 2011, in which Dale Waggoner, a passenger in an SUV driven by the Defendant, took money and cigarettes at gunpoint.  After the robbery, the Defendant parked at another Mapco. When two police officers drove by, he attempted to flee.  The police gave chase, and the Defendant crashed into a tree and fled on foot into the woods.  After detaining the

Defendant, the police took him to the police station for an interview, and he signed a waiver of his *Miranda* rights.

In his statement, the Defendant admitted dropping off Mr. Waggoner at the Mapco and pulling around. He said that when Mr. Waggoner returned to the car, he said, "[Let's] go," and opened a pack of cigarettes. He said they did not discuss robbing the Mapco beforehand. He said that he knew he was in a "bad situation" but that he did not commit the robbery.

The jury found the Defendant guilty of facilitation of aggravated robbery and evading arrest in a motor vehicle. The trial court sentenced the Defendant as a Range II, multiple offender to an effective ten-year sentence. This appeal followed.

# I

The Defendant contends that his police interview should have been suppressed because it violated his Fifth Amendment privilege against self-incrimination due to his fatigue and intoxication when he made the statement. The State responds that his condition did not invalidate his waiver of rights. We agree with the State.

At the suppression hearing, Metropolitan Nashville Police Sergeant Josh Blaisdell testified that on January 20, 2011, around 1:34 a.m., he received a call from police dispatch about a robbery at a nearby Mapco gas station and that the suspects were in a dark SUV. He said that he was in front of another Mapco gas station when he received the call and that he saw a dark SUV behind the store when he pulled in to turn around. He said that he was driving an unmarked police car but that when a marked police car drove by, the SUV's lights came on, and it drove away. He said that these actions were suspicious and that he attempted to stop the SUV. He said that the SUV accelerated and that the chase began less than a minute after he received the robbery call.

Sergeant Blaisdell testified that he reached speeds between sixty and seventy miles per hour during the chase. He said the SUV approached a dead end, slowed to about ten miles per hour, passed through roadside shrubs, and struck a tree. Sergeant Blaisdell said that after the collision, the Defendant ran into the woods and that he contacted other officers to set up a perimeter and call a K-9 unit. He said that he removed two people from the SUV and that another officer returned the Defendant to the scene within five minutes. He said that he looked inside the SUV and saw a handgun on the front passenger's side floorboard, a carton of Newport cigarettes, and money on the driver's side floorboard. He said that the car was not damaged badly because it was only going about ten miles per hour when it hit the

tree and that to his knowledge, the damage to the front did not impair the SUV's operation. He said the air bags had not deployed.

On cross-examination, Sergeant Blaisdell testified that during the pursuit, his car and the SUV were the only cars on the road and that not many people were in the area. He did not know whether the Defendant wore a seatbelt during the collision or whether the Defendant's head struck the steering wheel. He agreed that he was not a licensed medical professional and said that although he did not see the Defendant vomit, the Defendant left his sight after the accident.

Sergeant Blaisdell testified that it was a "straight shot" between the two Mapco stations. He said that he was about 100 yards from the SUV when he received the call and that the SUV was parked with its headlights off. He did not know if the engine was running. He said that the speed limit was forty miles per hour but that the SUV traveled between sixty and seventy miles per hour during the chase. He said that the pursuit lasted about a minute and that the Defendant passed through a flashing red light and entered a dead-end road.

On redirect examination, Sergeant Blaisdell identified a photograph of the inside of the SUV, which showed no damage. On recross-examination, he said that the photograph of the SUV showed a crack in the windshield but that he did not know if it was caused by the accident.

Upon examination by the trial court, Sergeant Blaisdell testified that he was stopped when he received the call and entered the Mapco parking lot because he heard the dispatcher say "Mapco." He said that the SUV was parked with its lights off and that he realized it matched the description of the car from the robbery. He said his suspicions were raised by the location and description of the SUV and by its lights coming on when the police car passed. He said he knew from experience that a delay existed between the robbery and dispatch's alerting him.

Metropolitan Nashville Police Detective Aaron Harrison testified that the Defendant was not present when he arrived at the scene but was apprehended a short time later. He said the police found a pistol and a carton of Newport cigarettes in the SUV. He stated that they took the Defendant and the other two individuals to the police station but that the Defendant was the only one willing to be interviewed.

Detective Harrison noted damage to the front of the SUV but said that none of the passengers required medical treatment. He said no one was bloody or bruised or requested medical treatment. He said that he did not recall deployed air bags and that although damage to the SUV was visible, it was not "totaled." He stated that although the report showed the

-3-

Defendant's interview began at 3:30 a.m., he knew it started at 2:30 because he checked and verbally announced the time at the beginning of each interview. He stated that before asking the Defendant questions, he read the *Miranda* rights to the Defendant, who said he understood and signed the rights waiver. He said that while interviewing the Defendant, he marked "no" on the rights waiver to the question about intoxication. He stated that although the Defendant said he had "a couple of beers" that night, Detective Harrison did not feel he was intoxicated. He said the Defendant was responsive, coherent, attentive, and understood his rights and Detective Harrison's questions. He said the Defendant described the events of the night and admitted driving the vehicle involved in the robbery. He said the Defendant recounted picking up Mr. Waggoner, dropping him off at the store, opening a pack of cigarettes from the stolen carton, and the police chase. He said that the Defendant answered the questions and spoke coherently.

Detective Harrison testified that the Defendant coughed and that he offered him a trash can and provided water. He said that after the interview, the Defendant walked by himself in handcuffs. He stated that the Defendant asked to use the phone and was able to dial the number from memory. He said that although to his knowledge the Defendant never fell asleep or complained of fatigue, the Defendant put his head down during the interview. Detective Harrison did not know whether the Defendant was tired or unhappy he had been caught. He said the interview lasted thirty minutes.

On cross-examination, Detective Harrison testified that because he had not previously talked with the Defendant, he did not know whether the Defendant was slurring his words. He said he planned to charge the Defendant with aggravated robbery regardless of the interview. He said he examined the Defendant's criminal history after arriving at the station. He said the Defendant coughed profusely before the interview and may have said he felt like vomiting.

Detective Harrison testified that he knew the Defendant had been in a car accident, that he did not have medical training, and that he did not take the Defendant to the hospital. He said that he did not know whether the Defendant wore a seat belt during the accident and that he was unsure whether the air bag deployed or if the Defendant's head struck the steering wheel. He did not remember if the Defendant said whether he was intoxicated but remembered his stating he had been drinking beer. He said that the Defendant's answers to his questions were "thought out" and that the Defendant was coherent, although the Defendant put his head on the table during the interview. Detective Harrison said that he determined the Defendant was not intoxicated by talking with him.

The trial court found that the Defendant was neither too intoxicated nor too tired to waive his rights voluntarily because throughout the interview he "seemed coherent, was able

to maintain his attention to the situation at hand, and was able to give specific responses to the questions asked." The court denied the motion to suppress.

An appellate court may consider the evidence presented at the suppression hearing as well as at the trial in determining whether the trial court properly denied a pretrial motion to suppress. *State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998). We note that the trial testimony was similar to the suppression hearing testimony. A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996); *State v. Jones*, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of the conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. The application of the law to the facts as determined by the trial court is a question of law which we review de novo on appeal. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

A defendant who is in custody and being interrogated is provided protections against self-incrimination under the Fifth Amendment of the United States Constitution and article I, section 9 of the Tennessee Constitution. *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980); *State v. Bush*, 942 S.W.2d 489, 499 (Tenn. 1997). One of those protections is the administration of certain warnings to the arrested defendant, including that he "has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). A defendant can waive these rights and make a statement after they are given, but such a waiver must be knowing, voluntary, and intelligent before the statement can be used as evidence. *Id.* at 444; *State v. Darnell*, 905 S.W.2d 953, 960 (Tenn. Crim. App. 1995). The State has the burden to prove waiver by a preponderance of evidence. *Bush*, 942 S.W.2d at 500. To make such a determination, the court looks to the totality of the circumstances under which the statement was made. *State v. Thacker*, 164 S.W.3d 208, 248-49 (Tenn. 2005); *State v. Kelly*, 603 S.W.2d 726, 728-29 (Tenn. 1980)).

In this case, the Defendant argues that his waiver was invalid due to his level of intoxication. This court has held that a defendant who gave a coherent narrative of events was not intoxicated to such a degree that his waiver was involuntary. *State v. Robinson*, 622 S.W.2d 62, 67 (Tenn. Crim. App. 1980); *Lowe v. State*, 584 S.W.2d 239, 241 (Tenn. Crim. App. 1979). In *Terrance Lee Hannah*, the defendant had a blood alcohol content of .28 percent but made coherent statements. The court determined that the waiver was valid. *See State v. Terrence Lee Hannah*, No. 01C01-9711-CC-00540, slip op at 9-11 (Tenn. Crim. App., Nov. 4, 1998), *perm. app. denied* (Tenn. Apr. 12, 1999).

In the present case, based on Detective Harrison's testimony, the trial court found that the Defendant was not too intoxicated to make a valid waiver of his rights. Detective Harrison testified that when he asked the Defendant questions, the Defendant provided coherent answers, a narrative of the night's events, and specific details. We conclude that the waiver is valid.

The Defendant also claims that due to the timing of the interview, he was too tired to waive his rights. This court has stated that being tired does not indicate an invalid waiver. *See State v. Michael A. Virga*, No. M2008-00209-CCA-R3-CD, slip op at 11-12 (Tenn. Crim. App. Mar. 3, 2009), *perm app denied* (Tenn. June 15, 2009). In *Michael A. Virga*, the defendant waived his rights but never complained about being tired or fell asleep. *Id.* He slept one hour on the night of the crime and regularly the night before. *Id.* The defendant was held for four hours before he was questioned for two hours. *Id.* In addition, he gave a detailed statement, and this court held that he was not too tired to waive his rights voluntarily. *Id.*

In the present case, the trial court found that the waiver was not invalid due to sleep deprivation because the Defendant was coherent, maintained his attention, and answered Detective Harrison's questions. The court said that although the Defendant put his head on the table during the interview, the weight of the evidence indicated that the waiver was valid. The Defendant did not say he was tired during the interview. We conclude that the waiver was voluntary, knowing, and intelligent and that the Defendant is not entitled to relief.

## II

The Defendant contends that the transcript of the video recording was improperly admitted at the trial because it was not the "best evidence." The State argues that the best evidence rule does not preclude the transcript. We agree with the State.

The Defendant cites Tennessee Rule of Evidence 1002, which provides, "To prove the content of writing, recording, or photograph, the original writing, recording, or photograph is required." The Defendant argues that the tape, not the transcript, was the best evidence of the statement. He also cites Tennessee Rule of Evidence 1004, which states that unavailability of the original may justify the admission of a copy. He argues that because the original was available, this rule does not allow the admission of the transcript. He also claims that allowing such a transcript could result in a "slippery slope" to allowing the police to make a poor recording and transcribe it with intentional inaccuracies.

If the original recording is included with the transcript, the best evidence rule is not offended. *See State v. Willie Nathaniel Smith*, No. W2001-02973-CCA-R3-CD (Tenn. Crim.

App. Jan. 9, 2003). Recordings and transcripts may be presented together if the witness who presents them was present during the recording or monitored the recorded conversation and was in a position to identify the speaker with certainty. *State v. Walker*, 910 S.W.2d 381, 394-95 (Tenn. 1995). Also, "a transcript of a tape may be given to a jury where the jury is instructed that the tape, and not the transcript is the evidence." *State v. Barnard*, 899 S.W.2d 617, 623-24 (Tenn. Crim. App. 1994).

Detective Harrison conducted the recorded interview, testified about the contents of the recording, and compared the transcript to the recording to verify the accuracy. The record reflects that the trial court instructed the jury to rely on the recording, not the transcript, as the evidence. Thus, the transcript was properly provided. The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE