STATE of Tennessee, Appellee,

v.

Herbert Lee MASSEY, Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

Jan. 6, 1988.

Permission to Appeal Denied by Supreme Court April 4, 1988.

Janice Bossing, Asst. Atty. Gen., W. Edward Barnard, John Zimmermann, Asst. Dist. Attys. Gen., Nashville, for appellee.

Kenneth J. Ries, Nashville, for appellant.

## OPINION

DAUGHTREY, Judge.

The defendant, Herbert Lee Massey, was originally charged with six robbery-related offenses. In two of them, he robbed store clerks at gunpoint. In four others, he drove the getaway car for a co-defendant who committed three robberies and attempted a fourth.

Massey pleaded guilty to five counts of armed robbery and one count of assault with intent to rob. The trial court sentenced him to eight years on the assault charge and 17½ years on the three robbery charges in which Massey was the "wheelman." All four of these sentences were ordered to be served concurrently with each other, but consecutive to two concurrent 25-year sentences on the two counts in which Massey was charged with being the actual "triggerman." Hence, he received an effective sentence of 42½ years on the six robbery charges.

Massey now appeals the sentencing order, alleging (1) that the sentences imposed by the trial court are excessive and (2) that the trial court erred in ordering them to be served consecutively. After *de novo* review of the record, as required by TCA § 40–35–402(d), we conclude that the sentences imposed are not unreasonable under the circumstances. Moreover, we find no error in the trial court's decision to order partial consecutive sentencing.

There is no dispute about the facts introduced to support Massey's six guilty pleas. The record shows that he and his co-defendant, Roger Dale Maupins, robbed or attempted to rob the employees and customers of five separate businesses during a one-hour crime spree in the Murfreesboro Road area of Davidson County. Massey and Maupins drove a car belonging to Massey's father and carried a .38 pistol that Massey had obtained from his father.

At the first two stops, Maupins took Massey's pistol inside and robbed three different people, while Massey waited outside in the car. At the third stop, Maupins frightened the motel desk clerk so thoroughly that she could not comply with his demands and the robbery was aborted. Thereafter, Massey took over the job of triggerman and robbed two different store clerks, one at a convenience market and another at a service station.

A police officer responding to radio dispatch reports of these robberies spotted Massey and realized that he matched the description of one of the robbers. He approached Massey, who ran to his waiting car, where Maupins was waiting at the wheel. Two more officers arrived on the scene just as Maupins was driving away and tried to stop the car. Maupins crashed into a building, jumped out of the car, and fled on foot, leaving Massey pinned in on the passenger side. Officers arrested Massey and retrieved the gun and the robbery proceeds from his car.

### I.

The defendant contends that his overall sentence should be reduced, for various reasons. He argues, first, that he was involved in what amounted to a single criminal episode lasting only an hour and points out that he has no prior felony convictions. He cites his age, his employment record, tests which show mild retardation, strong family ties, and efforts at rehabilitation while incarcerated as evidence that the sentence imposed was excessive when measured by the standards of TCA § 40–35–103 and the principles announced in *State v. Moss*, 727 S.W.2d 229 (Tenn. 1986). He also argues, based on his own self-serving testimony at the sentencing hearing, that he intended no physical harm to the people he robbed.

The state responds that at age 25, the defendant can hardly be described as a

youthful offender. Although he had not been convicted of any serious offenses in the past, he has had run-ins with the law for assault, aggravated assault, public drunkenness, fraudulent use of a driver's license, and two separate charges of shoplifting.

The defendant contends that some of these convictions should not have been considered by the trial judge because court records fail to show that Massey was represented by counsel at the time of conviction. As support for this proposition, he cites *State v. O'Brien,* 666 S.W.2d 484, 485 (Tenn.Crim.App.1984), to the effect that prior misdemeanor convictions may not be used to enhance punishment in a new case where the state fails to prove that the accused had counsel or waived the right to counsel at the time of the prior convictions. In response, the state argues that *O'Brien* is inapplicable to sentencing questions under TCA § 40–35–101 *et seq.,* and should be limited to its facts.

■ *O'Brien* involved proof of prior DUI convictions to support a conviction for fourth offense DUI. The court held that under *Baldasar v. Illinois,* 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), "an uncounselled misdemeanor conviction could not be used to enhance a subsequent misdemeanor conviction by converting the subsequent offense into a felony" or by otherwise enhancing the sentence of the predicate offense because of the existence of prior convictions for the same offense. *State v. O'Brien,* 666 S.W.2d at 485. We agree with the state that the principle recognized and applied in *O'Brien* should not be applied wholesale to the sentencing situation. It is one thing to require a showing that prior convictions were not uncounselled when those convictions must be pleaded and proved under a statute making a subsequent offense subject to enhanced punishment. By contrast, when a sentencing judge reviews an accused's prior record under TCA § 40–35–111(1), he or she must look to the defendant's "previous history of criminal convictions or criminal behavior." Hence, it is not only the defendant's prior conviction record that is at issue, but also

any other criminal misconduct, regardless of whether it resulted in arrest, indictment, or conviction, based on counselled or uncounselled pleas, or on the verdict of a jury. We conclude that for purposes of determining an appropriate sentence under TCA § 40–35–111(1), the trial court is not limited to consideration of prior convictions in cases in which it affirmatively appears that the defendant was represented by counsel, but may also consider prior incidents of "criminal behavior" that bear upon the sentencing determination.

■ Beyond the question of Massey's prior record, there were several other statutory enhancement factors that the trial court could properly consider to support the imposition of sentences above the 10-year minimum permitted by the armed robbery statute, TCA § 39–2–501. Despite the defendant's insistence to the contrary, for example, there was evidence, namely the supplying of the car and the pistol, to indicate that Massey was "a leader in the commission of an offense involving two (2) or more criminal actors." *See* § 40–35–111(2). Massey's testimony that he was, in effect, shanghaied by Maupins into participating in the robberies is undercut by proof that once Maupins stumbled in the execution of the crime, Massey took over and committed the last two robberies himself. Moreover, the offenses in this case involved many "more than one victim." *See* § 40–35–111(3). Further, the state makes a plausible argument that under § 40–35–111(7), the offense also "was committed to gratify the defendant's desire for pleasure," based on Massey's own admission that he and Maupins were using drugs at the time of the offenses, from which circumstance the state infers that the two men may have been motivated to rob in order to purchase more drugs. Finally, the record shows clearly that the defendant "had no hesitation about committing a crime when the risk to human life was high." *See* § 40–35–111(10). This risk obviously increased exponentially as the number of robberies increased, especially in terms of the relatively short period of time involved and the degree of desperation that must have been engendered by it.

There was no objective proof of mitigating factors in the defendant's favor. We conclude, under all the circumstances, that the 17½ and 25–year sentences imposed against Massey were not unreasonable.

## II.

■ Nor do we find any error in the trial court's decision to make the defendant serve some of these sentences concurrently and others consecutively. The trial judge found, under *Gray v. State*, 538 S.W.2d 391 (Tenn.1976), that Massey was a "dangerous offender," defined in *Gray* as one who shows by the offenses committed "that he has little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." *Id.* at 393. The defendant insists that this finding was in error, based on additional language in *Gray* which he argues is controlling in his particular case.

After defining who constitutes a "dangerous offender," the *Gray* court said:

> This does not mean that all defendant convicted of several counts of a dangerous offense, such as armed robbery, should be consecutively sentenced. Even though armed robbery is a dangerous offense, there are increased penalties for that crime. The decision to impose consecutive sentences when crimes inherently dangerous are involved should be based upon the presence of aggravating circumstances and not merely on the fact that two or more dangerous crimes were committed.

*Id.*, 531 S.W.2d at 391.

This comment by the court is appropriately applied to episodic offenses, *i.e.*, one act of armed robbery which involves multiple victims, or multiple offenses committed simultaneously or serially against a single victim. *Cf. Peabody v. State*, 556 S.W.2d 547 (Tenn.Crim.App.1977). Indeed, as this court has held in one or more unreported decisions, it may even be appropriately applied to separate acts of armed robbery, involving separate victims, and occurring at separate times and places. The question is: how many of these separate offenses must be committed before their number alone is sufficient to constitute "the presence of aggravating circumstances," as indicated in the *Gray* opinion quoted above?

The correct answer to this question requires us to engage in some form of line-drawing. But we need not decide in this case where that exact line must be drawn for all other cases. Indeed, the demarcation may not be a "bright line" at all—that is, it may have to be drawn on an ad hoc basis, at a different point in each individual case, based on the totality of the circumstances. In any event, we conclude that the commission of five full-blown armed robberies and the attempt to commit a sixth, all within the space of an hour, is enough to convince us that the perpetrators are "dangerous offenders" under *Gray*. To hold otherwise would put a premium on the execution of rapid-fire multiple offenses of a potentially violent nature, raising the risk factor to an unacceptable degree even in the absence of any other "aggravating circumstances." Indeed, in this very case there is no way of knowing how many more armed robberies Massey and Maupins would have committed, had they not been stopped when they were by direct police intervention. Fully concurrent sentencing in this situation would have the effect of promoting crime sprees, of encouraging criminals to commit as many offenses as possible in as short a time as possible, in the expectation of receiving a sentence that effectively punishes only the initial offense. We do not believe that our Supreme Court, in drafting the language of *Gray*, intended to foster such a policy.

At the same time we must recognize, as the trial court implicitly did, that no physical injuries were inflicted on the victims of these multiple offenses. Although this fact may be attributable more to luck than to design, it was adequately reflected in the trial judge's decision to make cumulative the two sets of sentences imposed on the defendant, but not to run all six of them consecutive to one another. In striking this compromise, the trial judge gave adequate recognition to both the spirit and the letter of *Gray*.

The defendant in this case is not a youthful first offender who, perhaps hesitatingly, nervously, committed two or three robberies or attempted robberies in the vein of a Robin Hood or at the behest of a Fagin and then remorsefully turned himself into police. This is, instead, an adult offender with a prior criminal record, who has been unsuccessfully placed on probation in the past and has proven to be unrehabilitated, who armed himself with a .38 pistol and set out with a previously convicted felon on a cold-blooded (though not bloody) and violent crime spree that threatened the lives and well-being of half a dozen or more innocent people. We conclude that the trial judge was correct in refusing to deprecate the seriousness of these offenses by sentencing the defendant to minimum terms and then running all his sentences concurrently.

We affirm the judgment entered below.

DWYER and BYERS, JJ., concur.