**FILED**

**March 25, 2008**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**



IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

MARCH SESSION, l995

STATE OF TENNESSEE  )
                    )
      APPELLEE  )      NO. 0lC0l-94l0-PB-00365
                    )
                    )      DAVIDSON COUNTY
V.                )
                    )      HON. JAMES R. EVERETT, JR.
                    )      JUDGE
DANNY LEE ROSS, JR.  )
                    )      (Vehicular Homicide - 3 counts)
      APPELLANT )

FOR THE APPELLANT:         FOR THE APPELLEE:

Edward T. Kindall              Charles W. Burson
Attorney at Law                Attorney General
227 2nd Ave., North, 2nd Floor
Nashville, TN 3720l           William David Bridgers
                          Assistant Attorney General
                          450 James Robertson Parkway
                          Nashville, TN 37243-0493

                          Victor S. Johnson, III
                          District Attorney General

                          Bernard F. McEvoy
                          Asst. Dist. Attorney General
                          Suite 500, Washington Square Bldg.
                          222 Second Avenue, South
                          Nashville, TN 3720l

AFFIRMED

OPINION FILED:_____

JERRY SCOTT, PRESIDING JUDGE

**O P I N I O N**

On February 10, 1994, the appellant was convicted by a jury of his peers of three counts of vehicular homicide by intoxication.[1]  Following a sentencing hearing, the appellant was sentenced to six years incarceration for each count with each sentence to be served consecutively.  Much aggrieved by his convictions and resultant sentences, the appellant appeals from the judgment of the trial court pursuant to Rule 3, Tenn. R. App. P.

On appeal, the appellant does not contest his convictions, but instead challenges the appropriateness of the sentences imposed.  He presents two distinct issues for review by this Court:  (a) whether the trial court erred in enhancing the appellant's sentence to the maximum sentence within the statutory range and (b) whether the trial court erred in ordering the sentences of the appellant to be served consecutively.  As to both issues, we find no error.

At approximately 8:40 p.m. on February 11, 1993, the appellant proceeded through a red light at the intersection of Donelson Pike and Lakeland Drive in Nashville, resulting in a fatal collision.  Eyewitnesses testified that the appellant, travelling in excess of the speed limit, failed to stop for the red light and continued into the intersection without decelerating.  The appellant's vehicle struck the side of a vehicle driven by Pamela Tidwell and also occupied by her seventeen year-old son, Blake Tidwell, and his fifteen year-old girlfriend, Keri Scheib.  The Tidwell vehicle was struck with sufficient momentum to propel it into a third vehicle before coming to rest against a telephone pole.  As a result of the crash, Ms. Tidwell, her son, and his girlfriend sustained fatal injuries.  After striking the Tidwell vehicle, the appellant's vehicle spun into two additional vehicles before coming to a rest.  The appellant received only minor injuries as a result of the collision.

---

[1]The offense of vehicular homicide by intoxication is codified at Tenn. Code Ann. §39-13-213(a)(2).

**DISCUSSION**

In examining the propriety of a sentence rendered against a criminal defendant, this court must conduct a de novo review based on the record. Tenn. Code Ann. § 40-35-401(d). However, this court must presume that the determinations made by the trial court are correct. Id. Therefore, if our review reveals that the trial court imposed a lawful sentence pursuant to the Tennessee Criminal Sentencing Reform Act of 1989 after having given proper consideration and weight to the relevant sentencing factors under the Act and the sentence is based on findings of fact which are adequately supported by the record, then we may not disturb the sentence imposed by the trial court. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). Furthermore, the appellant has the burden of establishing that the sentence rendered by the trial court was erroneous. Sentencing Commission Comments to Tenn. Code Ann. § 40-35-401(d); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); State v. Anderson, 880 S.W.2d 720, 727 (Tenn. Crim. App. 1994).

Concerning what constitutes an appropriate punishment, the Sentencing Reform Act provides that the sentence imposed shall be one that is "justly deserved in relation to the seriousness of the offense." Tenn. Code Ann. § 40-35-102(2). The Act also mandates that the sentence be the least severe measure necessary to achieve the purposes of the Act and that inequalities should be avoided. Tenn. Code Ann. § 40-35-103(3),(4); see Ashby, 823 S.W.2d at 168.

The portion of the Sentencing Reform Act of 1989 codified at Tenn. Code Ann. § 40-35-210 established several specific procedures to be followed in the sentencing process. This section mandates the trial court's consideration of the following: (1) The evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and

3

arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) any statement the defendant wishes to make in his own behalf about sentencing. See Manning v. State, 883 S.W.2d 635, 638 (Tenn. Crim. App. 1994).

Establishing an appropriate sentence is a two-step process.  Initially, the trial court must determine the appropriate range of punishment for the offense. Then the court must fix a particular sentence within the appropriate range.  The presumptive sentence shall be the minimum sentence in the range if no enhancement or mitigating factors exist. Tenn. Code Ann. § 40-35-210(c). If enhancement factors exist but there are no mitigating factors, which is the situation in the present case, then the trial court may set the sentence above the minimum in that range but still within the range. Tenn. Code Ann. § 40-35-210(d).

Vehicular homicide by intoxication is a Class C felony, punishable by a sentence "not less than three (3) nor more than six (6) years." Tenn. Code Ann. §§ 39-l3-2l3(b), 40-35-112(a)(3).  In setting the appellant's sentence at the maximum sentence, the trial court found three enhancement factors were applicable:  (a) the appellant has a previous history of criminal behavior in addition to those necessary to establish the appropriate range, Tenn. Code Ann. § 40-35-ll4(l); (b) the offense involved more than one victim, Tenn. Code Ann. § 40-35-ll4(3); and (c) the appellant had no hesitation about committing a crime when the risk to human life was high. Tenn. Code Ann. § 40-35-114 (10).  The appellant challenges the trial court's findings concerning each of those factors.

The first enhancement factor applied by the trial court was that the appellant "has a previous history of criminal convictions or criminal behavior in

4

addition to those necessary to establish the appropriate range." Tenn. Code Ann. § 40-35-114(1). The record reveals that the appellant began drinking when he was approximately fourteen years old. By age sixteen, he was getting drunk three to four times per week. From the time of his mother's death until the night of the offense, the appellant abused alcohol almost every night. The appellant himself testified that he had operated a motor vehicle while intoxicated on several occasions prior to the date of the fatal collision, and that he was arrested for such an offense eight days prior to the collision. He further admitted that he had experimented with marijuana, cocaine, and LSD beginning at the age of fifteen. The appellant also stated that he knew that such conduct was illegal at the time each offense transpired.

In his brief, the appellant states that the trial court's finding of this factor based on his history of alcohol and drug abuse was "far fetched." We cannot agree. Instead, we believe that if anything is far fetched, it is for one to argue, after even a cursory review of the law of this State and the record in this case, that the appellant's conduct did not constitute criminal behavior. In State v. Massey, 757 S.W.2d 350, 352 (Tenn. Crim. App. 1988), this Court made it clear that a trial court, in applying this enhancement factor, may consider not only prior convictions, but also all prior criminal behavior, regardless of whether it resulted in legal entanglements. See State v. Little, 854 S.W.2d 643, 652 (Tenn. Crim. App. 1992)(trial court properly applied the enhancement factor where the record contained evidence that the defendant had been involved in a number of prior drug transactions). Moreover, it is of no consequence that the appellant was a minor during the majority of his prior criminal behavior. See State v. Adams, 864 S.W.2d 31, 34 (Tenn. 1993)(where our Supreme Court noted that a previous history of criminal conduct by a defendant while still a juvenile "may be

5

taken into account in fashioning a proper sentence."). The record is replete with evidence justifying application of this factor.

Another enhancement factor applied by the trial court is that the offense involved more than one victim. Tenn. Code Ann. § 40-35-114(3). Relying on State v. Lambert, 741 S.W.2d 127, 134 (Tenn. Crim. App. 1987), the appellant contends that this factor may not be used because he was convicted on a separate count for each victim. Although we acknowledge the validity of Lambert, it is distinguishable from the present case and, thus, not controlling.

In the recent case of State v. Raines, 882 S.W.2d 376, 384 (Tenn.Crim.App. l994), this Court defined "the word 'victim,' as used in Tenn. Code Ann. § 40-35-114(3), [as] a person or entity that is injured, killed, had property stolen, or had property destroyed by the perpetrator of the crime." (footnote omitted). Several additional cases, although not specifically delineating a definition of a victim, are relevant to a resolution of this issue. E.g., State v. Norris, 874 S.W.2d 590, 601 (Tenn. Crim. App. 1993)(factor applied where defendant was convicted on separate counts of aggravated assault concerning injuries inflicted upon passengers in the front seat of a vehicle, but two passengers in the rear seat of the vehicle were also injured); State v. Williamson, No. 03C01-9210-CR-00371, 1993 WL 335433, at *1 (Tenn. Crim. App. Sept. 1, 1993)(factor applied in robbery conviction where, in the process of stealing a purse, the defendant knocked the elderly lady carrying the purse into a lady walking with her); Register v. State, No. 01C01-9210-CC-00329, 1993 WL 311529, at *4 (Tenn. Crim. App. Aug. 12, 1993)(factor applied to an aggravated burglary conviction where the defendant forced a woman to surrender her money and remove her panties while in the presence of her two-year-old son).

The record reflects that the appellant's running of the red light resulted in a five car accident.[2] One of the motorists involved in the accident testified at the sentencing hearing concerning the nature and extent of the damage to her automobile, as well as to an injury to her knee. Clearly, under Raines, the owners of the three other vehicles, as well as the driver whose knee was injured, could properly be considered victims.

The third enhancement factor employed by the trial court was that the defendant had no hesitation about committing a crime when the risk to human life was high. Tenn. Code Ann. § 40-35-114(10). Prior to the Sentencing Reform Act of 1989, this Court found that the factor was properly applied in sentencing a defendant who recklessly drove through streets crowded with motorists and pedestrians prior to killing the particular victims for whose death he was charged. State v. Lambert, 741 S.W.2d at 134. Recently, our Supreme Court, in discussing the applicability of Tenn. Code Ann. § 40-35-114(10), cited Lambert with approval. State v. Jones, 883 S.W.2d 597, 603 (Tenn. 1994).

In Jones, our Supreme Court, in discussing the proper usage of the enhancement factor, explained: "as a practical matter, hesitation or lack of hesitation does not submit readily to proof because of its subjective nature. The more logical interpretation of this enhancement factor places the emphasis on 'risk to human life was high.'" 883 S.W.2d at 602. In an unpublished opinion, State v. Bingham, No. 03C01-9404-CR-00127, 1995 WL 60003, at *2 (Tenn. Crim. App. Feb. 14, 1995), this Court relied on Jones in finding:

> Little, if any, emphasis is to be placed on whether the defendant "hesitated" before committing the crime. [Jones, 883 S.W.2d at 602.] . . . [W]here a high risk to human life is established with facts separate from those necessary to establish an element of the offense, the enhancement factor is not an essential element of the offense and may be applied if supported by the facts. In a vehicular homicide by recklessness case, if the proof that establishes a "high risk to human life" can be separated from the proof necessary to establish that the defendant's conduct "created

---

[2]According to an investigating officer, excluding the vehicles of the appellant and Ms. Tidwell, three other vehicles were damaged in the crash.

a substantial risk of death or serious bodily injury to <u>a person</u>," then enhancement factor (10) is not an essential element of the offense. Therefore, enhancement factor (10) may be applied where the defendant creates a high risk to the life of a person other than the [deceased] victim, because the facts establishing the enhancement factor would be separate from the facts necessary to establish a high risk of death to <u>a person</u>.

<u>Id.</u> (citations omitted)(emphasis in original).

Turning to the facts of this case, which are quite similar to the facts in <u>Lambert</u>, the trial court found that the proof adduced at trial was more than ample to justify application of enhancement factor (10). We agree. The record supports the finding that the appellant consumed alcohol intermittently throughout most of the day on the date of the offense. Less than an hour before the fatal collision, the appellant, while leaving a bowling alley where he was involved in an altercation, stated, "I'm loaded and I ain't through yet." He then proceeded to drive his vehicle out of the parking lot of the bowling alley at a dangerously high rate of speed which was estimated to be forty miles per hour by one witness. About ten minutes later and approximately seven miles from the bowling alley, the fatal accident occurred when the appellant ran a red light and began a chain of collisions. Witnesses testified that the appellant was travelling far in excess of the speed limit and did not brake or otherwise appear to decelerate as he entered the intersection. Moreover, the appellant admitted that he was intoxicated that evening. The severity of the risk to human life posed by the appellant's conduct is demonstrated by the fact that the lives of three people were extinguished[3] and another person was injured; the widespread nature of the risk is demonstrated by the fact that five automobiles, including the appellant's, sustained damage.

---

[3]We do not utilize the fact that three deaths occurred as any sort of justification for applying enhancement factor (10), but instead reference the deaths to illustrate the extreme force with which the appellant's car entered the intersection, as well as the resultant dangers for all motorists who happened to be in and around the intersection.

In short, the appellant drove his vehicle through a red light into a crowded intersection at an excessive rate of speed. The risks inherent in such conduct were compounded by his diminished driving capacity due to his intoxication. Clearly, the appellant's conduct posed a grave risk to the lives of all of the motorists who were involved in the crash, as well as others who were in the vicinity. Although the consequences which befell Ms. Tidwell, her son, and his girlfriend cannot be properly employed to support application of the enhancement factor, the extreme risks to the lives of the other motorists are sufficient to justify the trial court's finding.

We find no error in the trial court's application of the three enhancement factors or in the sentences imposed. The issue is without merit.

In his second issue on appeal, the appellant contends that the trial court erred by finding that he is a "dangerous offender" and thus imposing consecutive sentencing. Our review of the record indicates that the ruling of the trial court was proper.

Subsection (a) of Tenn. Code Ann. § 40-35-115 provides that "[i]f a defendant is convicted of more than one (1) criminal offense, the court shall order sentences to run consecutively or concurrently as provided by the criteria in this section." Subsection (b) delineates seven categories of multiple offenders who can be ordered to serve consecutive sentences, one of which is the "dangerous offender." Tenn. Code Ann. § 40-35-115(b)(4). In State v. Woods, 8l4 S.W.2d 378, 380 (Tenn.Crim.App. l99l), this Court explained the standard for imposing consecutive sentencing on grounds that a defendant is a dangerous offender, holding that the record must establish:

> (a) the defendant's behavior indicates "little or no regard for human life," and he did not hesitate "about committing a crime in which the risk to human life is high," Tenn. Code Ann. §40-35-115(b)(4) . . .;

> (b) the circumstances surrounding the commission of the offense are aggravated, Gray v. State, 538 S.W.2d at 393;

9

(c) confinement for an extended period of time is necessary to protect society from the defendant's unwillingness to "lead a productive life and [his] resort to criminal activity in furtherance of [his] anti-societal lifestyle," Gray v. State, 538 S.W.2d at 393; and

(d) the aggregate length of the sentences, if consecutive sentencing is ordered, reasonably relates to the offenses of which the defendant stands convicted. State v. Taylor, 739 S.W.2d [227, 230 (Tenn. 1987)].

see also State v. Norris, 874 S.W.2d 590, 601 (Tenn. Crim. App. 1993).

Concerning the first Woods factor, the trial court found that shortly before the fatal collision, the appellant, referring to his alcohol consumption, made a statement to the effect that "he was loaded and was not through yet." The trial court found that the appellant was driving his vehicle at a very high speed, as evidenced by the widespread damage to the automobiles in this case. The court also relied on the fact that the appellant had been arrested for driving while intoxicated the week prior to this offense, and was out on bond for that arrest when this crime was committed. Moreover, we believe that the appellant's admission that he was intoxicated that evening, his failing to stop for a red light, and the number of individuals involved in and endangered by the crash, are relevant.

The court found that the circumstances surrounding the offense were aggravated in that the appellant was out on bond for a driving while intoxicated arrest. The judge determined that at the time of the offense the appellant's state of intoxication was advanced. Finally, the court emphasized that the conduct of the appellant resulted in the termination of three innocent lives. The court concluded by stating that it could hardly imagine circumstances which would be more aggravating than those of this case.

With regard to the third Woods' factor, the trial court found that the appellant has shown no remorse concerning his conduct or the deaths of three innocent people. After the accident, the appellant denied being involved in the

10

collision, and later cursed the deceased victims. The court further determined that the appellant has shown no potential for rehabilitation, specifically noting that the appellant had not availed himself of the extensive alcohol-abuse treatment program in the Metro jail.[4]

The final criterion or factor, that the aggregate length of the sentences reasonably relate to the offenses of the appellant, was not specifically addressed by the trial court in the record. Under certain circumstances, such as where the evidence suggests some doubt as to what the outcome of the ruling would be or where this omission was but one of a larger body of errors, justice would dictate a remand to the trial court for further findings. Here, however, it is manifest to this Court that the aggregate length of the sentences, eighteen years,[5] is reasonably related to the appellant's egregious conduct which resulted in the senseless slaying of three people, including two teenagers.

In the recent case of State v. Timothy Michael Wilkerson, No. 02S01-9406-CC-00033 (Tenn., Jackson, Aug. 21, 1995) (for publication), our Supreme

---

[4]Our review of the record reveals that a Department of Correction employee testified at the sentencing hearing to the effect that the appellant failed to complete an alcohol treatment program that he was ordered to complete as a condition of his release on bond concerning his D.U.I. arrest which occurred eight days prior to the offenses involved sub judice. The employee stated that the director of the program requested the appellant to leave the program because the appellant was not sincerely interested in being rehabilitated or dealing with his alcohol problem. However, the appellant testified at the sentencing hearing that he was enrolled in a drug and alcohol treatment program at the prison.

In addition to the grounds stated by the trial court, careful review of the record discloses that the appellant has a history of displaying an unproductive and anti-societal lifestyle. The appellant testified that he began drinking alcohol at age fourteen or fifteen, and that by age fifteen he began experimenting with marijuana, cocaine, and LSD. According to his testimony, by age sixteen he was getting drunk three to four times per week. At the time of the offense, the appellant was drinking heavily almost every day. He testified that since age sixteen, he had driven on numerous occasions while under the influence of alcohol. Moreover, prior to the offense, the appellant dropped out of high school and moved in with a dancer who financially supported him.

[5]As a Range I, Standard Offender, the appellant will be eligible for parole in approximately five and one-half years.

11

Court approved this Court's <u>Woods</u> opinion "only to the extent it applied the principles set forth in (the <u>Wilkerson</u>) opinion." Slip Opinion at 12. Although our examination of <u>Wilkerson</u> and <u>Woods</u> reveals nothing of significance in <u>Woods</u> that actually conflicts with <u>Wilkerson</u>, we recognize that <u>Wilkerson</u> provides the standards for Tennessee courts to follow in assessing the need for consecutive sentencing.

In <u>Wilkerson</u>, our Supreme Court set forth two specific findings which the court must make in imposing consecutive sentences, in addition to the general principles of sentencing. The court must find that (I) "an extended sentence is necessary to protect the public against further criminal conduct by the defendant," and (2) that "the consecutive sentences must reasonably relate to the severity of the offenses committed." Slip Opinion at I4.

Both of these criteria are met in this case. It is manifest that an extended period of incarceration is necessary to protect the public from this drunken killer and the consecutive sentences which aggregate eighteen years as a Range I standard offender reasonably relate to the severity of the offenses - the senseless killing of three innocent victims.

After a thorough review of the trial court's findings, as well as our independent examination of the record, we cannot say the appellant has met his burden of showing that the trial court erred in ordering his sentences to be served consecutively.

Accordingly, we affirm.


_____
JERRY SCOTT, PRESIDING JUDGE


CONCUR:


_____
JOSEPH M. TIPTON, JUDGE


_____
DAVID G. HAYES, JUDGE