IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 1, 2016

**STATE OF TENNESSEE v. SARITA ALSTON**

**Appeal from the Criminal Court for Shelby County**
**No. 13-00205      Lee V. Coffee, Judge**

_____

**No. W2016-00355-CCA-R3-CD  -  Filed March 9, 2017**

_____

The defendant, Sarita Alston, was sentenced to an effective sentence of twenty-five years in confinement by the trial court for the merged convictions of reckless endangerment, aggravated child neglect, and aggravated child endangerment.  On appeal, the defendant argues that the trial court improperly enhanced her aggravated child neglect sentence to the maximum within-range sentence of twenty-five years in violation of the purposes and principles of the Tennessee Criminal Sentencing Reform Act. Following our review of the briefs, the record, and the applicable law, we affirm the twenty-five year sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Jeff Woods, Memphis, Tennessee, for the appellant, Sarita Alston.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Carrie Shelton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Procedural and Factual Background**

*Trial*

On January 17, 2013, the Shelby County grand jury returned an indictment charging the defendant with one count of aggravated child abuse, one count of aggravated

child neglect, and one count of aggravated child endangerment. The following evidence was presented at trial.

Officer Kyle Picciotti, with the Memphis Police Department, responded to 2119 Pendleton Street based on a 911 ambulance call concerning a child with severe burns. When he arrived at the location, he was met by the defendant who was standing outside the residence holding the victim, her three-year-old son. According to Officer Picciotti, the defendant seemed aggravated by his presence stating, "I didn't call for you. I called for an ambulance."

When Officer Picciotti inquired as to what happened, the defendant informed him that she was in the kitchen cooking and discovered that the victim had urinated on himself. She sent him to the bathroom to clean up. Minutes later, the defendant heard screaming coming from the bathroom. When she entered the bathroom, the defendant found the victim in the bathtub with the water running.

Officer Michael Coburn, a member of the Memphis Police Department's Crime Scene Investigations Unit, was also dispatched to the defendant's residence. After photographing the home, Officer Coburn took temperature readings from the bathtub faucet. According to Officer Cobrun, the hot water coming directly from the faucet registered on his temperature gauge at 140 degrees Fahrenheit. He then placed the "stopper" in the bathtub and allowed the water to collect in the bathtub for nine minutes. After nine minutes, there were four and three-fourth inches of water in the bathtub and the temperature reading of the water was 115 degrees Fahrenheit. Officer Coburn testified he then took measurements of the defendant's three other children. The oldest child, a six-year-old male, measured three feet, nine inches tall. The middle child, a four-year-old female, was measured at three feet, one inch in height. And, the youngest child, almost two-year-old male, was two feet, six inches tall. According to Officer Coburn, none of the other children had splash marks or burns on their body.

After processing the defendant's residence, Officer Coburn went to the hospital to photograph and document the victim's injuries. In addition to photographing the burns on the victim's legs, Officer Coburn also photographed bruising on the victim's arms and shoulders.

Daphnie Swift, a case manager with Tennessee Department of Children Services, received a referral concerning the victim and allegations of abuse. During her initial trip to the hospital to visit the victim, she was unable to speak with him because he was heavily sedated. She was, however, able to speak with the defendant. According to Ms. Swift, the defendant informed her that she was in the kitchen cooking when she noticed

what smelled like one of the children "had used the bathroom on themselves." When she turned around it was the victim.

The defendant directed the victim to go to the bathroom and wait for her. The defendant stayed in the kitchen for five minutes until she heard a "distressed cry." As she headed to the bathroom, the victim met the defendant in the hallway. According to Ms. Swift, the defendant stated that the victim was "coming down the hall with all the skin on his legs burned and skin in his hands." When Ms. Swift asked the defendant how the victim got burned, the defendant stated her youngest child, who was just a few months shy of two years old at the time, must have turned on the water, and the victim must have undressed himself and climbed into the bathtub.

Memphis Police Officer Sergeant James Byars, who is assigned to the Child Abuse Special Victim's Unit, made contact with the defendant by phone on June 5. When Sgt. Byars inquired about the victim's injuries, the defendant stated, "Someone had put the stopper in the tub. Filled it with hot water and the victim was burned." During that conversation, Sgt. Byars made arrangements to meet the defendant at the hospital the next day.

Sgt. Byars recorded his first conversation with the defendant on the morning of June 6. During their conversation, the defendant claimed that the victim urinated on himself while she was preparing dinner and talking to her son's father on the phone. She instructed the victim to go to the bathroom, sit on the toilet, and wait for her. About five minutes later, the defendant heard the victim crying. As she walked to the bathroom, she was met by the victim in the hallway and noticed he had burns on both legs. Both the victim and his older brother told the defendant that the youngest brother had turned on the bathtub faucet.

The defendant gave a second statement to Sgt. Byars on the evening of June 6. Again, the defendant stated that she sent the victim to the bathroom to sit on the toilet and wait for her. However, during this statement, she claimed that when she entered the bathroom the water was still running and both of her other boys were in the bathroom. The defendant also admitted that the victim did not have any other burns on his body and neither of the other children had burns. When asked if the victim is able to get into the bathtub by himself, the defendant said he was and explained that "he will put one foot in and then the other one."

The defendant gave a third statement to Sgt. Byars on June 7. In her third statement, the defendant again claimed

3

I said somebody ran some hot water and he got scalded. I said I was in the kitchen preparing dinner and I heard [the victim] give a distress call out to me. I walked toward the restroom and he met me in the hallway with his legs scald[ed]. He had skin in his hand, and it was dripping off of his legs. There was skin floating in the water in the bathtub.

In her third statement, the defendant also denied ever telling the officers that she initially found the victim sitting in the bathtub.

Dr. Karen Larkin, an expert in general pediatric medicine and child abuse pediatrics, testified she was asked to consult in the victim's treatment. According to Dr. Larkin, the victim suffered second-degree burns that encompassed his lower extremities. He also had numerous contusions and bruising on his abdomen, thighs, back, arms, and shoulders. Dr. Larkin testified that the victim's burns were identical on each leg and consistent with being placed in hot water, rather than someone entering the bathtub one foot at a time. According to Dr. Larkin, the victim's injuries appeared to be "immersion burns." Based on the degree to which his feet and legs were burned, Dr. Larkin testified that he would not have been able to walk.

Dr. Larkin also testified that "potty training" is a very high risk time for abuse because parents get frustrated. Burning is a common form of abuse with "potty training because the [child] is being cleaned by an angry and frustrated parent." According to Dr. Larkin, the bruising on the victim's body is consistent with a parent holding the child in the hot water and the child is struggling to get out. In order to receive the wounds the victim suffered, the water would have already been in the bathtub and then the victim would have been placed in the tub.

The defendant did not testify but did call her mother, Shirley Randolph, as a witness. Ms. Randolph testified that she was talking to the defendant on the phone when the defendant said she would have to call back because the baby was crying. When the defendant did call Ms. Randolph back, she told her that the victim "hurt his legs real bad." Ms. Randolph also testified that when the victim's youngest brother came to the hospital room the victim started screaming "no, no, no."

At the conclusion of the trial, the jury found the defendant guilty of reckless endangerment as a lesser-included offense of aggravated child abuse, aggravated child neglect, and aggravated child endangerment.

*Sentencing Hearing*

4

During the sentencing hearing, the State did not present any witnesses and relied solely on the proof presented at trial, the defendant's pre-sentence report, and argument. The defendant also decided not to present any testimony. The defendant, however, did submit, for the trial court's consideration, letters of support from family members and several certificates from courses/programs she completed while incarcerated. After considering the evidence presented at trial, the parties' submissions at the sentencing hearing, and the applicable sentencing principles and guidelines, the trial court found the defendant to be a Range I, standard offender, and sentenced the defendant to eleven months and twenty-nine days for reckless endangerment, twenty-five years for aggravated child neglect, and twenty-two years for aggravated child endangerment. The trial court then merged Counts 1 and 3 into Count 2 for an effective sentence of twenty-five years with the Tennessee Department of Correction.

In making its sentencing determination, the trial court found, as an enhancement factor, the defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range. In support of this conclusion, the trial court relied on the defendant's prior misdemeanor convictions for several traffic offenses, her numerous prior arrests for felony offenses, and the proof at trial, including statements contained in the Department of Children Services' report, indicating prior abuse of the victim.

The trial court also found, as an applicable enhancement factor, that the victim's age made him particularly vulnerable in that he was unable resist or call for help. Finally, the trial court found the defendant's sentences for reckless endangerment and aggravated child neglect should be enhanced based on her abuse of a position of private trust.

In reviewing potential mitigation evidence, the trial court gave some weight to the letters of support from the defendant's family members. Specifically, the trial court noted "it is not inconsistent with a person being caring, loving and giving, and still causing injuries to her child." The trial court also considered as mitigation the fact that the defendant has "completed many courses and acquired many certificates while she has been in the Shelby County jail."

## Analysis

The sole issue raised by the defendant on appeal is her claim that the trial court abused its discretion by imposing the maximum sentence of twenty-five years for her conviction of aggravated child neglect. She argues that the trial court did not place sufficient weight on the mitigation proof offered, placed undue weight on her prior misdemeanor convictions, and erroneously found the victim to be particularly vulnerable. The State argues the trial court did not abuse its discretion in sentencing the defendant.

5

After reviewing the record, submissions of the parties, and applicable law, we affirm the judgment of the trial court.

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -114, -210(b). In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." *Id.* § 40-35-103(4).

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only. *See* Tenn. Code Ann. § 40-35-114, -210(c). The 2005 amendments set forth certain "advisory sentencing guidelines" that are not binding on the trial court; however, the trial court must nonetheless consider them. *See id.* § 40-35-210(c). Although the application of the factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114." *Id.* § 40-35-210(b)(5). The trial court must also place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." *Id.* § 40-35-210(e). The weighing of mitigating and enhancing factors is left to the sound discretion of the trial court. *State v. Carter,* 254 S.W.3d 335, 345 (Tenn. 2008). The burden of proving applicable mitigating factors rests upon appellant. *State v. Mark Moore,* No. 03C01-9403-CR-00098, 1995 WL 548786, at *6 (Tenn. Crim. App. Sept. 18, 1995) (citation omitted). The trial court's weighing of the various enhancement and mitigating factors is not grounds for reversal under the revised Sentencing Act. *Carter,* 254 S.W.3d at 345 (citing *State v. Devin Banks,* No. W2005-02213-CCA-R3-DD, 2007 WL 1966039, at *48 (Tenn. Crim. App. July 6, 2007), *aff'd as corrected,* 271 S.W.3d 90 (Tenn. 2008)).

When an accused challenges the length and manner of service of a sentence, this Court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise,* 380 S.W.3d 682, 707 (Tenn. 2012). If a trial court misapplies an enhancing or mitigating factor in passing sentence, said error will not remove the presumption of reasonableness from its sentencing determination. *Bise,* 380 S.W.3d at 709. This Court will uphold the

6

trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See Carter,* 254 S.W.3d at 346. The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn. 1991).

Tennessee Code Annotated section 40-35-114(4) provides that a sentence may be enhanced when "[a] victim of the offense was particularly vulnerable because of age or physical or mental disability." Whether a victim is "particularly vulnerable" for purposes of Tennessee Code Annotated section 40-35-114(4) is "a factual issue to be resolved by the trier of fact on a case by case basis." *State v. Poole,* 945 S.W.2d 93, 96 (Tenn. 1998); *State v. Adams,* 864 S.W.2d 31, 35 (Tenn. 1993). Use of the "particularly vulnerable" enhancement factor is appropriate in this case if the facts show that the vulnerability of the victim had some bearing on, or some logical connection to, "an inability to resist the crime, summon help, or testify at a later date." *Poole,* 945 S.W.2d at 96 (defining "vulnerability" under § 40-35-114(4)); *see also State v. Kissinger,* 922 S.W.2d 482, 487 (Tenn. 1996); *State v. Adams,* 864 S.W.2d 31, 35 (Tenn. 1993).

The record contains sufficient evidence in addition to the age of the victim to support the Tennessee Code Annotated section 40-35-114(4) enhancement factor. In applying this enhancement factor to the defendant's sentence, the trial court concluded that the victim, a three-year-old child, was particularly vulnerable because "this child was unable to call for help, was unable to resist what his mother did to him . . . ." Evidence showed that the victim was placed and held in the scalding hot water. This conclusion is not only supported by the victim's second-degree immersion burns, but also the bruising found on the victim's arms and shoulders. This evidence supports the trial court's reliance on this enhancement factor. Accordingly, the defendant has failed to show an abuse of discretion on the part of the trial court and is not entitled to relief.

The defendant next contends the trial court erred by giving too much weight to her previous traffic-related misdemeanor convictions and by not giving enough weight to the mitigation proof offered by the defendant in the form of letters of support from her family members and certificates of achievement from numerous classes she completed while in jail. As previously stated, enhancement and mitigating factors are advisory only. *See* Tenn. Code Ann. § 40-35-114 (2014); *see also Bise*, 380 S.W.3d at 699 n.33, 704; *Carter*, 254 S.W.3d at 343. This Court is "bound by [the] trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Carter*,

254 S.W.3d at 346. We conclude that the defendant's within-range sentence is consistent with the purposes set out in the Sentencing Act and that it was within the trial court's broad discretion to enhance the defendant's sentence for her prior misdemeanor convictions and not to afford much weight to her letters of support and certificates of achievement. Thus, the defendant is not entitled to relief on this issue.

Finally, the defendant appears to argue that the trial court abused its discretion in reviewing the nature and characteristics of the criminal conduct involved. The defendant argues that by finding her guilty of the lesser-included offense of reckless endangerment, rather than aggravated child abuse, the jury found she did not act intentionally, so the trial court's conclusion that the defendant caused the victim's burns is misplaced and improper. This Court has recognized, however, that a trial judge may find evidence of criminal *behavior* even though there has been no conviction. *State v. Massey,* 757 S.W.2d 350, 352 (Tenn. Crim. App. 1988). A trial court may even apply an enhancement factor based on facts underlying an offense for which the defendant has been acquitted, so long as the facts have been established in the record by a preponderance of the evidence. *State v. Winfield,* 23 S.W.3d 279, 283 (Tenn. 2000).

Here, the evidence produced at trial supports the trial court's conclusion that the defendant placed and held the victim in the scalding hot water. In support of his conclusion, the trial court noted Dr. Larkin testified that the "child had to be immersed in the water, had to be held down, and in her opinion, he was, in fact, forcibly held down by his shoulders for a number of seconds . . . ." The court then concluded, "I don't know how you take your child, a three-year-old son, stick him in boiling hot water, and forcibly hold him down to the extent that this child has suffered burns that will be with him and injuries that will be with him the rest of his life . . . ."

Based on the applicable law and the proof presented at trial, the trial court did not abuse its discretion when, in evaluating the nature and characteristics of the criminal conduct, it concluded that the defendant was responsible for the severity of the victim's injuries. Accordingly, the defendant is not entitled to relief on this claim.

## Conclusion

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
J. ROSS DYER, JUDGE

8